419 F.Supp. 1061 (1976)
Rose Mary BOYD et al., Plaintiffs,
v.
OZARK AIR LINES, INC., Defendant.
No. 75-528C(4).
United States District Court, E. D. Missouri, E. D.
August 23, 1976.
*1062 Susan Spiegel, Mid-America Employment Rights Project, St. Louis, Mo., for plaintiffs.
Jerry L. Redfern, Springfield, Robert B. Vining, and Donald J. Meyer, Clayton, Mo., Neale, Newman, Bradshaw & Freeman, Springfield, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
Plaintiff Rose Mary Boyd brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 28 U.S.C. §§ 2201 and 2202, claiming discrimination on the basis of sex.
The case was tried before the Court without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties, and being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

FINDINGS OF FACT
1. Plaintiff Rose Mary Roth Boyd is a female resident of the state of Missouri and was during all times relevant herein a citizen of the United States. Plaintiff represents a class composed of all future female applicants who meet the reasonable qualifications of serving as an airline pilot with defendant airlines.
2. Defendant Ozark Air Lines, Inc. (hereinafter "Ozark") is a Delaware corporation doing business in the state of Missouri. Ozark is engaged in the intra- and interstate transportation of passengers and cargo. Defendant is an employer within the meaning of 42 U.S.C. § 2000e(b).
3. Defendant presently employs approximately 380 pilots, all male. It has never employed a female pilot. Defendant has established certain minimum criteria which applicants must meet in order to be considered for employment. These criteria consist of
(a) Age: 20-30 years old;
(b) Minimum flight experience (correlated to age);
(c) Professional permits and certificates;
(d) Education: high school graduate with college preferred;
(e) Satisfactory completion of defendant's examination;
(f) Height: 5'7" to 6'2".
Plaintiff challenges herein only the requirement relating to height. This criteria has been in effect since at least May of 1960.
4. Plaintiff is presently employed as Chief Flight Instructor at St. Charles Flying Service. She has worked there approximately four years. Plaintiff met all of defendant's pre-employment criteria, with the exception of height. Plaintiff is slightly shorter than 5'2" tall. Plaintiff has never flown either the DC-9 nor the FH227, the two types of aircraft flown by defendant airlines.
5. Plaintiff first filed an application with defendant airlines in the early spring of 1973. At this time, plaintiff was married to an Ozark pilot and the evidence tended to show that her then-husband brought the *1063 application home to her, without bringing the list of pre-employment criteria along with it. This application was reviewed by Peter Sherwin, defendant's Director of Flight Operations, with plaintiff. Sherwin advised plaintiff to attain an additional rating and to increase flight time. The evidence established that Sherwin encouraged plaintiff to seek a position as a pilot. There is no evidence which indicates that Sherwin had looked at that part of the application which indicated plaintiff's height, nor that he realized that plaintiff was only 5'2" tall.
6. In August of 1973, plaintiff updated the information on her application to indicate that she had obtained an additional rating and had increased her flight time.
7. In the fall of 1973, Sherwin advised plaintiff that she did not meet defendant's minimum height requirement. At the same time, however, he indicated that it might be possible to waive this requirement and mentioned the names of those persons at defendant airlines who would have the authority to waive this requirement. The evidence clearly established that Sherwin did all he could to encourage plaintiff to seek the position as a pilot.
8. Plaintiff wrote a letter to Charles Mounts, Vice-President of Industrial Relations at defendant airlines, explaining why she, as a woman, wished to become an airline pilot.
9. Plaintiff was given an interview, and tested, on March 26, 1974. The tests were written tests. On April 22, 1976, plaintiff was advised by a form letter that while she satisfied defendant's criteria, she had not been selected for inclusion in the next training group. No reasons were given, although defendant has continually maintained that the reason for the rejection was plaintiff's height.
10. Defendant's decision to deny plaintiff a place in the training class was not, in whole or in part, based on plaintiff's sex. The sole reason that plaintiff was denied a position was because plaintiff failed to meet defendant's minimum height requirement.
11. Statistics presented by plaintiff establish that for the age group encompassing 18 to 34 years, a 5" 7" height requirement excludes approximately 25.8% of the males and approximately 93% of the females. Among active fliers, without a distinction made for age, the height requirement eliminates 11.24% of the males and 74.19% of the females. Thus, the evidence established that defendant's height requirement had a disparate impact upon women.
12. It was conceded by virtually every witness herein that a pilot must have free and unfettered operation of the controls in the aircraft. The cockpits of the airplanes involved herein are designed around a design eye reference point. When a pilot is seated so that his eyes are in this reference point, he has the ability to see over the glare shield of the plane and still be able to view and reach all the instruments inside the cockpit. Should a pilot sit below the design eye reference point, the change in the angle of vision can cause a distorted view of the land below, thus causing landing difficulties.
13. When plaintiff was seated in the cockpit of the FH227, she was unable to fully rotate the wheel once she had located herself in the design eye reference point. The testimony of her own witness was that the wheel "bound with her thigh, making it inoperable". In the DC-9, when plaintiff was seated in the design eye reference point, the clearance between the wheel and her thigh was four centimeters, or approximately 1.57 inches. Credible evidence established that because of the vibrations of the airplane in flight, a clearance of 1.57 inches was insufficient to assure free and unfettered use of the controls of the plane. The evidence clearly established that plaintiff at a height of 5'2" would be unable to fly the DC-9 and FH227 used by Ozark.
14. Various other commercial airlines maintain minimum height requirements. Testimony indicated that Delta Airlines has a minimum of 5'8" and both American Airlines and Continental Airlines require their pilots to be 5'6" tall. The United States military presently maintains a minimum *1064 height requirement for pilots of 5'4". Defendant has conceded that it considers 5' 5" to be the minimum required to safely fly an airplane.
15. Testimony presented established that a person's height does not necessarily determine the way that height is distributed. Certain people may have long bodies and short legs while others might have the reverse proportions. The only adequate method of determining whether an applicant is of the proper body proportions to be able to reach all the controls in the cockpit at the design eye reference point is to place the applicant in a simulated cockpit. The only available simulator, however, is in Pittsburgh and the costs of obtaining one here in St. Louis, or transporting applicants to Pittsburgh would be prohibitive.

CONCLUSIONS OF LAW
This Court has jurisdiction over the subject matter and the parties in accordance with 42 U.S.C. § 2000e-5(f).
Plaintiff has asserted that she was denied a position as a pilot because of her sex. The Court has concluded that plaintiff's sex was not a factor in defendant's decision but instead, that the decision was based on the fact that plaintiff did not meet the minimum height requirements. The statistical evidence adduced, however, establishes that defendant's minimum height requirement has a disparate impact upon women. This, combined with the fact that defendant does not employ any women among its 380 pilots, establishes a prima facie case of discrimination. Rogers v. International Paper Company, 510 F.2d 1340 (8th Cir. 1975), vacated on other grounds, 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975); Gilmore v. Kansas City Terminal Railway Company, 509 F.2d 48 (8th Cir. 1975). Accordingly, the burden shifts to defendant to establish that this height requirement is both job-related and a business necessity. See Albermarle Paper Company v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); Holthaus v. Compton & Sons, Inc., 514 F.2d 651 (8th Cir. 1975).
To establish that a practice is a business necessity, which operates as a defense to a charge of sex discrimination, defendant must show that the requirement fosters safety and efficiency and is "essential to that goal". United States v. N. L. Industries, Inc., 479 F.2d 354 (8th Cir. 1973) (emphasis in original).
[T]he business purpose must be sufficiently compelling to override any . . [sexual] impact; the challenged practice must effectively carry out the business purpose it is alleged to serve; and there must be available no acceptable alternative policies or practices which would better accomplish the business purpose advanced, or accomplish it equally well with a lesser differential . . . [sexual] impact. Robinson v. Lorillard Corporation, 444 F.2d 791, 798 (4th Cir. 1971), cert. dismissed, 404 U.S. 1006, 1007, 92 S.Ct. 573, 30 L.Ed.2d 655.
Defendant has amply met its burden of establishing that a height requirement is a business necessity. The evidence showed that pilots must have free and unfettered use of all instruments within the cockpit and still have the ability to meet the design eye reference point. In view of the cockpit design, over which defendant has little control, a height requirement must be established. The cockpit can only accommodate a range of heights. Defendant has chosen to draw the line at 5'7". The evidence established, however, that a requirement of 5'5", which would lessen the disparate impact upon women, would be sufficient to insure the requisite mobility and vision. Accordingly, the Court will order defendant to lower its height requirement to 5'5".
Plaintiff argues that the necessity of imposing a height requirement must be validated empirically. See C.F.R. § 1607.1 et seq. In Spurlock v. United Airlines, Inc., 475 F.2d 216, 219 (10th Cir. 1972), the court stated:
When a job requires a small amount of skill and training and the consequences of hiring an unqualified applicant are insignificant, the courts should examine closely any pre-employment standard or criteria *1065 which discriminate against minorities. In such a case, the employer should have a heavy burden to demonstrate to the court's satisfaction that his employment criteria are job-related. On the other hand, when the job clearly requires a high degree of skill and the economic and human risks involved in hiring an unqualified applicant are great, the employer bears a correspondingly lighter burden to show that his employment criteria are job-related. Cf. 29 C.F.R. § 1607.5(c)(2)(iii). The job of airline flight officer is clearly such a job. United's flight officers pilot aircraft worth as much as $20 million and transport as many as 300 passengers per flight. The risks involved in hiring an unqualified applicant are staggering. The public interest clearly lies in having the most highly qualified persons available to pilot airliners. The courts, therefore, should proceed with great caution before requiring an employer to lower his pre-employment standards for such a job.
The Court agrees with this reasoning. A height requirement is unquestionably job-related. The evidence on this point, as recited above, is overwhelming. Empirical data is not required, Spurlock, supra at 219, as there is adequate expert testimony on this point.
Plaintiff asks the court to take judicial notice of Civil Air Regulation 4b.353(c), 19 Fed.Reg. 4464 (1954), now codified in 14 C.F.R. § 25.777(c) (1976), which provides:
The controls must be located and arranged, with respect to the pilots' seats, so that there is full and unrestricted movement of each control without interference from the cockpit structure or the clothing of the minimum flight crew . . . when any member of this flight crew, from 5'2" to 6'0" in height, is seated with the seat belt fastened.
This provision, however, is not correlated with the requirement that the pilots, when seated in the cockpit, have the requisite visibility. See 14 C.F.R. § 25.773 which does not impose a height range. While defendant's airplanes of necessity must meet the requirements of § 25.777, the airplanes must also be constructed so as to afford the maximum visibility required. Whether plaintiff was able to reach the controls while seated in the airplanes was not disputed herein; what was disputed was her ability to reach the controls upon attaining the proper visibility. The regulation is silent on this point.
Plaintiff, in her post-trial brief, has submitted a series of charts, derived from exhibits which were refused at trial. These charts supposedly list deficiencies in qualifications possessed by defendant's pilots, and a comparison of women's application with those of incumbent pilots hired thereafter. The Court must conclude that these charts are inadmissible herein. See Rule 1006, Federal Rules of Evidence.
The Court has concluded that the imposition of a height requirement is both job-related and a business necessity. The Court has further concluded, however, that defendant's height requirement is unnecessarily high and to that extent, is violative of Title VII, 42 U.S.C. § 2000e et seq. The Court will order that defendant lower its minimum height requirement to 5'5".
Plaintiff has asked for attorney's fees in the amount of $10,450.00, plus costs herein. As plaintiff has prevailed in part herein, the Court will award attorney's fees. After careful consideration of the record herein, the Court is of the opinion that attorney's fees in the amount of $2,500.00 are reasonable and will be awarded. It is the Court's further conclusion that each party shall bear its own costs.