**Rose Mary Roth BOYD et al.,
Appellants,**

v.

**OZARK AIR LINES, INC., Appellee.**

**No. 76–1873.**

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 30, 1977.

Decided Oct. 3, 1977.

Rehearing and Rehearing En Banc
Denied Nov. 9, 1977.

Susan Spiegel and Michael J. Hoare, Mid-America Employment Rights· Project, St. Louis, Mo., filing brief for appellants.

Donald J. Meyer, Clayton, Mo., and Jerry L. Redfern, Springfield, Mo., filing brief for appellee.

Before GIBSON, Chief Judge, and LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

Rose Mary Boyd brought a class action pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.,* challenging Ozark Air Lines' five-foot-seven-inch minimum height requirement as sexually discriminatory.

The trial court certified the class to include only future female applicants who could meet the reasonable qualifications of serving as an airline pilot. *Rose Mary Roth Boyd v. Ozark Air Lines, Inc.,* No. 75–528 C (4) (E.D.Mo., unpublished order filed Nov. 24, 1975). It later held that a prima facie case of sex discrimination was established by statistical evidence that the minimum height requirement had a disparate impact on women [1] and Ozark employed no women as pilots. *Boyd v. Ozark Air Lines, Inc.,* 419 F.Supp. 1061 (E.D.Mo.1976). Thus, the burden shifted to Ozark to establish that the minimum height requirement was a business necessity. The trial court found that Ozark had:

> amply met its burden of establishing that a height requirement is a business necessity. The evidence showed that pilots must have free and unfettered use of all instruments within the cockpit and still have the ability to meet the design eye reference point. In view of the cockpit design, ·over which defendant has little control, a height requirement must be established. The cockpit can only accom-

[1.] Ozark's five-foot-seven-inch minimum height requirement excluded 25.8 percent of males and 93 percent of females from the ages of eighteen to thirty-four. It excluded 11.2 percent of the male, and 74.2 percent of the female, active pilots without regard to their age. Recent Supreme Court cases have made it clear "that to establish a prima facie case of discrimination, a plaintiff need only show that the facially neutral standards in question select applicants for hire in a significantly discriminatory pattern." *Dothard v. Rawlinson,* 433 U.S. 321, 329, 97 S.Ct. 2720, 2726, 53 L.Ed.2d 786, 797 (1977); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). The trial court correctly held that such a showing was made here.

modate a range of heights. Defendant has chosen to draw the line at 5'7". The evidence established, however, that a requirement of 5'5", which would lessen the disparate impact upon women, would be sufficient to insure the requisite mobility and vision. Accordingly, the Court will order defendant to lower its height requirement to 5'5".

*Id.* at 1064.

The trial court further found that Boyd, who is slightly shorter than five feet, two inches tall, would be unable to fly either type of plane used by Ozark. While Boyd's individual claim was unsuccessful, she did prevail in part and was awarded attorneys' fees.

### I.

■ Boyd first claims that the trial court erred in rejecting her claim of overt sex discrimination because Ozark was aware of her height at all times during the application process, because Ozark obliterated a portion of her application and because Ozark rejected numerous other women pilot applicants and hired less qualified males. The trial court found that Boyd was not denied a position in the Ozark pilot training class because of her sex. Instead, it found that "[t]he sole reason that plaintiff was denied a position was because plaintiff failed to meet defendant's minimum height requirement." *Id.* at 1063. It further found that Ozark was unaware of Boyd's height during the initial stages of the application process when her application was encouraged, that Boyd was herself initially unaware of Ozark's minimum height requirement and that Ozark consistently maintained that Boyd was rejected because of her height. We cannot say that these findings are clearly erroneous.

■ We recognize, however, that the destruction of business records may be sufficient to raise an unfavorable inference. *Cf. Rogers v. Exxon Research and Engineering Co.,* 550 F.2d 834, 843 (3rd Cir.

1977), *petition for cert. filed,* 45 U.S.L.W. 3759 (U.S. May 17, 1977) (No. 76–1451); *Stoumen v. Commissioner of Internal Revenue,* 208 F.2d 903, 907 (3rd Cir. 1953). Even if an unfavorable inference was raised here by Ozark obliterating a portion of Boyd's application, it was rebutted by evidence that she was rejected solely because of her height.

■ We also recognize that evidence of an employer's general policy and practice concerning members of the protected class is relevant to an individual charge of overt discrimination, *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804–805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 832 (8th Cir. 1977), and hold that the trial court erred in refusing to admit the applicant data offered by Boyd.[2] However, the trial court's error in refusing to admit the applicant data was harmless even if it would have demonstrated that other women pilot applicants had been rejected and less qualified males had been hired. Boyd already benefited from a rebuttal presumption in favor of individual relief because the statistical evidence that the minimum height requirement had a disparate impact on women established a prima facie case of sex discrimination. *See Teamsters v. United States,* 431 U.S. 324, 359, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396, 430 n. 45 (1977); *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 772–773, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Herbert Williams, et al. v. Robert Anderson, et al.,* 562 F.2d 1081, 1087 (8th Cir., filed Aug. 31, 1977).

■ The presumption was rebutted by evidence that Ozark rejected Boyd solely because of her height and that she was unable to fly either type of plane used by Ozark.

### II.

■ Boyd next contends that the trial court erred in finding that a five-foot-five-inch minimum height requirement was a

2. The trial court rejected the applicant data at trial as irrelevant and too onerous. It later rejected a summary of the applicant data submitted in Boyd's post-trial brief.

business necessity. We cannot agree. As the trial court found, there is ample evidence in the record to show that an individual's ability to operate all the instruments in the cockpit and reach the design eye reference point is dependent upon an individual's height and is essential to the safe and efficient operation of a plane.[3]

■ Boyd argues, however, that while this evidence may support the job relatedness and necessity of a minimum height requirement in general, the five-foot-five-inch height requirement approved by the trial court has not been sufficiently validated in accord with 29 C.F.R. § 1607.1 *et seq.* We cannot agree that empirical validation is required here. The Tenth Circuit stated in *Spurlock v. United Airlines, Inc.,* 475 F.2d 216 (10th Cir. 1972):

> When a job requires a small amount of skill and training and the consequences of hiring an unqualified applicant are insignificant, the courts should examine closely any pre-employment standard or criteria which discriminate against minorities. In such a case, the employer should have a heavy burden to demonstrate to the court's satisfaction that his employment criteria are job-related. On the other hand, when the job clearly requires a high degree of skill and the economic and human risks involved in hiring an unqualified applicant are great, the employer

bears a correspondingly lighter burden to show that his employment criteria are job-related. *Cf.* 29 C.F.R. § 1607.-5(c)(2)(iii). The job of airline flight officer is clearly such a job.

*Id.* at 219.

### III.

Boyd argues that the trial court abused its discretion in failing to certify a class of past female applicants.[4] The trial court refused to certify that class because it felt that the requirement of Fed.R.Civ.P. 23(a)(1) that the class be "so numerous that joinder of all members is impracticable" had not been met. No arbitrary rules on the size of classes have been established by the courts and the question of what constitutes impracticability depends upon the facts of each case. 7 Wright & Miller, Federal Practice and Procedure: Civil § 1762 at 592 (1972).

■ In this case, only fifteen women had applied for positions as pilots from 1966 to 1975. Seven of the fifteen women who applied were five feet, seven inches, or taller. The unsuccessful women applicants lived in ten states. Moreover, none of the fifteen female applicants had filed charges with the Equal Employment Opportunity Commission in satisfaction of the jurisdictional prerequisites of a Title VII action.[5]

---

**3.** The Supreme Court recently stated that " '[t]he touchstone is business necessity', *Griggs,* 401 U.S., at 431 [91 S.Ct. [849] at 853]; a discriminatory employment practice must be shown to be necessary to safe and efficient job performance to survive a Title VII challenge." *Dothard v. Rawlinson, supra,* 433 U.S at 331, 97 S.Ct. at 2728, 53 L.Ed.2d at 799 n. 14 (citations omitted). For a discussion of more restrictive definitions of business necessity developed by the lower courts, *see* Note, *Height Standards in Police Employment and the Question of Sex Discrimination: The Availability of Two Defenses for a Neutral Employment Policy Found Discriminatory Under Title VII,* 47 So. Calif.L.Rev. 585, 603–605 (1974).

**4.** The trial court also failed to certify the class of those women who might have applied but for the discriminatory practices challenged citing *Equal Employment Op. Com'n v. Detroit Edison Co.,* 515 F.2d 301 (6th Cir. 1975). The Supreme Court subsequently vacated the judg-

ment in that case, 431 U.S. 951, 97 S.Ct. 2669, 53 L.Ed.2d 267 (1977), and remanded it in light of *Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). In *Teamsters,* the Supreme Court made it clear that relief can be granted to those who were discouraged from application because of the challenged discriminatory practice. *Id.* 431 U.S. at 364–367, 97 S.Ct. at 1869–1870, 52 L.Ed.2d at 433–434. Boyd does not raise this issue on appeal.

**5.** Membership in a class action is not restricted to those who have filed charges with the EEOC when continuing discrimination is charged and when the notice given by the named plaintiff provides the defendant with an opportunity for conciliation with respect to the issues to be raised in court. *See, e. g., Macklin v. Spector Freight Systems, Inc.,* 156 U.S.App.D.C. 69, 75, 478 F.2d 979, 985 n. 11 (1973); *Oatis v. Crown Zellerbach Corporation,* 398 F.2d 496, 499 (5th Cir. 1968).

Boyd contends that the trial court failed to give sufficient weight to the geographical dispersion of the rejected female applicants and their failure to file timely charges with the EEOC. She argues that both factors make joinder of all the potential class members impracticable. We agree that both factors are entitled to consideration, since a trial court should make its determination of whether impracticability exists based upon all the circumstances surrounding a case. *See Arkansas Ed. Ass'n v. Board of Ed., Portland, Ark. Sch. Dist.,* 446 F.2d 763, 765 (8th Cir. 1971); *Demarco v. Edens,* 390 F.2d 836, 845 (2nd Cir. 1968).

We note, however, that it is not clear from the designated record whether either of these factors were brought to the attention of the trial court. No mention is made in either the "Stipulation for Purposes of Hearing on Determination of Class Action" or the exhibits attached thereto of the past female applicants' failure to file timely charges with the EEOC in satisfaction of the jurisdictional prerequisites of a Title VII action. Nor is it clear that the geographical dispersion of the past applicants was brought to the trial court's attention. In the appellants' brief, it is indicated that this information was contained in the defendant's answer to interrogatory 15 which was presented to the trial court as plaintiff's Exhibit 5 for the purpose of the class action determination. However, the Stipulation, as it appears in the designated record, only refers to four exhibits to be submitted by the plaintiff and only four exhibits are attached thereto.

■ The party seeking class certification bears the burden of showing the impracticability of joinder of potential class members. 7 Wright & Miller, *supra* § 1762 at 594. On the basis of this record, Boyd failed to satisfy that burden since it appears that neither of the factors which might have established the impracticability of joinder were brought to the attention of the trial court. In light of this fact and because of the small size of the potential class, we cannot say that the trial court abused its discretion in failing to certify the class. *See generally* 3B Moore's Federal Practice ¶ 23.05 (2d ed. 1976); 7 Wright & Miller, *supra* § 1762.

IV.

■ Boyd contends that the trial court erred in failing to order Ozark to test her in a simulator. She was measured when seated in both types of planes Ozark used and was found unable to safely operate either type. Thus, the trial court did not err in failing to order Ozark to test Boyd in a simulator.

V.

■ Finally, Boyd argues that the trial court erred in failing to award her costs. While costs are normally awarded to the prevailing party, such an award is within the sound discretion of the trial court. Fed.R.Civ.Proc. 54(d); 6 Moore's Federal Practice ¶ 54.70[5] (2d ed. 1976). Since the trial court did award Boyd $2,500 in attorneys' fees, we cannot say that it abused its discretion in failing to award her costs as well.

Affirmed.