## WAL–MART STORES, INC.

### v.

### Lewis R. CRIST, Receiver for Transit Casualty Company in Receivership.

### WAL–MART STORES, INC.

### v.

### ALEXANDER & ALEXANDER.

Civ. No. 85–5036.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Dec. 29, 1988.

Robert R. Rhoads, Asst. Gen. Counsel, Wal–Mart Stores, Inc., Bentonville, Ark., Robert Robinson, Hatfield, Robinson, Hodges, Marshall, Jordan & Shively, Little Rock, Ark., John D. Levine, David A. Ranheim, Michael J. Wahoske, Laurie A. Vasichek, Minneapolis, Minn., for Wal–Mart Stores, Inc.

William H. Sutton, Friday, Eldredge & Clark, Little Rock, Ark., for Lewis R. Crist, Receiver for Transit Cas.

David M. Powell & Patrick J. Goss, Wright, Lindsey & Jennings, Little Rock, Ark., James M. Kaplan, Philip J. Walsh & Eric Kornblau, Wilson, Elser, Edlman & Dicker, New York City, for Alexander & Alexander.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is another "round" in the "fight" between Wal–Mart Stores, Inc., one of the top two or three retail concerns in the United States, and the receiver for the insolvent insurance carrier, Transit Casualty Company. For a complete discussion of the facts, see this court's opinion in *Wal–Mart Stores, Inc. v. Crist*, 664 F.Supp 1242 (W.D. Ark.1987) and *Wal–Mart Stores, Inc. v. Crist*, 855 F.2d 1326 (8th Cir.1988).

The controversy arose from Transit's dealings, through an agent, with Wal–Mart which resulted in Transit agreeing to provide to Wal–Mart workers' compensation coverage covering all of Wal–Mart's employees for two policy years for a flat guaranteed premium of $7,000,000. In addition, Transit agreed to provide certain "tail coverage" more particularly described in the court's opinion cited above for a guaranteed premium of $2,852,000. At the

trial, the receiver introduced evidence which tended to show that, as a result of these policies, Transit paid in behalf of Wal–Mart total losses on the two workers' compensation policies and the "tail coverage" policy approximately $30,000,000, with approximately $21,000,000 of this being paid on the workers' compensation policies alone. The fact that Transit received premiums of less than $10,000,000 and paid claims approximating $30,000,000 undoubtedly had something to do with Transit's subsequent insolvency.

After a seven day trial, this court, for the reasons stated in its decision cited above, declined to grant Wal–Mart most of the relief requested in its first amended complaint filed June 20, 1985, and its third party complaint filed against its agent, Alexander & Alexander, Inc., on February 7, 1986. As requested by Wal–Mart, the court did declare that the tail coverage was in full force and effect and that the receiver would be required to pay claims arising under it.

The court declined to grant Wal–Mart's request that it be declared not to be liable for additional premiums payable under the workers' compensation policies and, instead, awarded Transit judgment on its counterclaim in an amount approximating $20,000,000. The basis of the court's judgment, for the reasons stated in its opinion, was that the "deal" between Transit and Wal–Mart was illegal in all states in which Wal–Mart did business. The court reasoned that the law of each of these states specifically prescribes the workers' compensation coverage that Wal–Mart is required to provide and, in turn, specifically provides what Wal–Mart and other insureds will pay for it. In other words, the court believed that the law of the relevant states, in effect, said "this is the coverage that you must have" and "this is what you must pay for it," and, since Wal–Mart received the coverage required, it must pay for it what the law directs.[1] The court of

---

[1] The court of appeals appeared to believe, and apparently found, that: "The district court found that the insurance policies were enforceable pursuant to the terms appearing on their face, computed according to Wal–Mart's actual payroll." *Wal–Mart*, 855 F.2d at 1334. The court of appeals seemed to believe that "the district court separated the insurance agreement

appeals agreed "that the agreement is illegal and violates the law of each state," *Wal–Mart*, 855 F.2d at 1333, and that Wal–Mart "became an active participant in carrying out the illegal portions of the insurance contract." *Id.* at 1335.

Nevertheless, the court of appeals concluded that this court should have "found the parties in pari delicto and refused to grant relief of any sort." It concluded its opinion by saying: "we reverse the decision of the district court with respect to Transit's counterclaim, and remand with directions to dismiss the case without relief to any party." *Wal–Mart*, 855 F.2d at 1336. In its judgment, it "ordered and adjudged that the judgment of the district court be reversed and the cause remanded to the district court for proceedings consistent with the opinion of this court."

Wal–Mart did not seek, before the court of appeals, taxation of the expense of reproduction of the briefs and the designated record, but expressly reserved the right to seek taxation of costs in the district court under the provisions of Rule 39(e) of the Federal Rules of Appellate Procedure. Now it seeks to recover the supersedeas bond cost in the amount of $30,139.00.

■ Rule 39(e) provides for the district court to consider reimbursement for certain costs "incurred in the preparation and transmission of the record, the cost of the reporter's transcript, if necessary for the determination of the appeal, the premiums paid for cost of supersedeas bonds or other bonds to preserve rights pending appeal, and the fee for filing the notice of appeal. . . ." Under the heading "to whom allowed", Rule 39(a) provides, in pertinent part, "if a judgment is reversed, costs shall be taxed against the appellee unless otherwise ordered; if a judgment is affirmed or reversed in part, or is vacated, costs shall be allowed only as ordered by the court."

The receiver objects to reimbursement of the cost of the supersedeas bond because it contends that the judgment was only reversed in part and that, thus, the last clause of Rule 39(a) should be applied and that the court should not order that it reimburse Wal–Mart for the costs of the bond. The court agrees that the receiver for the insolvent insurance company should not be required to pay to Wal–Mart the sum of $30,139.00 as reimbursement for the premiums paid, and reaches that conclusion whether the action of the court of appeals is characterized as a reversal or a reversal in part.

It is important to remember that this action was commenced by Wal–Mart by it filing a complaint on February 15, 1985, and a first amended complaint on June 20, 1985. In the first amended complaint it asked that this court enter judgment declaring that it had "no liability to the defendant for additional premium[s]"; "declaring that the tail coverage was in full force and effect and directing Transit to carry out its obligations thereunder" and "enjoining Transit from breaching its obligations under the tail coverage and directing Transit to fulfill all obligations and duties owed to Wal–Mart pursuant to the tail coverage"; and awarding it "all past, present, and prospective damage resulting from Transit's breaches of contract as aforesaid." Additionally, by separate motion, it sought a preliminary injunction "enjoining the defendant from refusing to carry out its obligations with respect to the tail coverage provided under the 1983 workers' compensation policy and retro policy."

It later withdrew its request for a preliminary injunction, but the court points to it as an indication of the damages that it claimed and apparently sought as a result of the tail coverage controversy. In an affidavit accompanying a motion for preliminary injunction, John Sooter, Director of Risks and Benefits, swore, among other things, that Wal–Mart had an outstanding workers' compensation claim with exposure in excess of $200,000 which could not be paid because of Transit's breaches and that "there were 55 open claims, 43 workers'

into two parts, a premium portion and a coverage portion, and enforced one segment but not the other." *Id.* at 1334. This court did not intend to do that, did not think that it did that, does not believe that it did that, and did not think that its opinion said that.

compensation claims and nine general liability claims against Wal–Mart with a total outstanding reserves of $950,505.36." Additionally, in its brief accompanying the motion for preliminary injunction, Wal–Mart contended that it would suffer "immeasurable damage which would occur to Wal–Mart's good name and reputation" and that this would cause irreparable harm to this "Fortune 500 company whose great growth and success is largely due to its good name and reputation in not only the business community, but in the communities in which each of its stores are situated." Presumably, these damages were at least a portion of the damages sought in the portion of the prayer of the complaint seeking damages for "past, present, and prospective damages" resulting from the alleged breaches by Transit. Subsequently, Wal–Mart brought its insurance agent and consultant, Alexander & Alexander, Inc., into the lawsuit as a third party defendant and claimed, among other things, that it should recover from this agent all sums and other damages that it incurs or will incur in defense and payment of the claims intended to be covered under the tail coverage.

As a result of this court's decision, judgment was entered against Wal–Mart for additional premiums due and in it's favor in respect to the tail coverage question. In this respect, the court declared that the tail coverage was in full force and effect and that the receiver would be required to pay the claims made under it. The court did not award Wal–Mart damages for alleged breaches of Transit nor of its agent, Alexander & Alexander.

On appeal, the court of appeals, as already indicated, directed that this court, in effect leave the parties where it found them, not awarding relief to any party. Thus, although the court of appeals, at least in its judgment, termed its action a reversal, it is obvious that the final result of this litigation gave each of the parties something. It may be, as a practical matter, that Wal–Mart benefited most as it appears that Transit is insolvent and probably could not pay Wal–Mart anything anyway, but the fact still is that Wal–Mart did not come close to getting what it sought in this litigation and was not, by any means, made whole, as the court of appeals seemed to recognize. Because it was, according to the court of appeals, one of the "active and willing participants in a knowingly illegal venture," even after the reversal it did not have tail coverage to cover the substantial losses that Sooter swore that it would have if Transit did not live up to its obligation under that coverage. Additionally, it was not allowed to recover damages for its claimed loss of good name and reputation, nor was it permitted to recover damages for the negligence and breach of its agent, Alexander & Alexander.

Thus, what all this boils down to is that, as a result of the reversal on appeal, Wal–Mart was not required to pay a substantial counterclaim judgment entered by this court in favor of Transit, but, on the other hand, as the court of appeals pointed out, it will have no coverage for any additional workers' compensation claims and will be liable for them, and it will not be allowed to recover from either the receiver or Alexander & Alexander the substantial damages that it claimed that it would suffer. *Wal–Mart,* 855 F.2d at 1336.

The court believes that there is considerable merit in the receiver's argument that Wal–Mart was not the prevailing party on appeal or that it did not, by any means, recover as a result of this litigation all that it sought. Thus, there appears to be merit in the contention that this court's judgment was reversed only in part since the court of appeals said: "[w]e reverse the decision of the district court *with respect to Transit's counterclaim,* and remand with directions to dismiss the case *without relief to any party.*" (emphasis supplied).

If that is true, the last clause of Rule 39(a) would apply and Wal–Mart's costs would "be allowed only as ordered by the court." That clause seems to create a presumption against recovery, or, at least, it gives the court considerable discretion. If that is the portion of Rule 39 that is to be applied in this case, the court exercises the considerable discretion that seems to be given by the rule and declines to award to

Wal–Mart the cost of its supersedeas bond. It did not prevail on a major portion of its claims made in this litigation.

In *Kuzma v. United States Postal Service,* 725 F.2d 16 (2d Cir.1984) *cert. denied,* 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 62 (1984), a case in which plaintiff claimed before the court of appeals attorney's fees in the amount of $1,000.00 and costs and disbursements totaling $110.04, the court of appeals remanded the case for entry of an order allowing *Kuzma* $110.04. Because he did not prevail on his claim for an attorney's fee, the court declined to award him the cost of the appeal, citing Rule 39(a).

Our case is analogous to the *Kuzma* case. Wal–Mart sought the relief delineated above and gained part of it because of the appeal, but not all. As already discussed, it was left by the decision of the court of appeals with substantial liabilities and possible liabilities.

Be that as it may, the court is convinced that, even if the result of the court of appeals action is that this court's judgment was reversed and, thus, that the penultimate clause of Rule 39(a) applies, this court should exercise its sound discretion and refuse to award Wal–Mart this element of cost incurred on appeal. This court could find no reported cases construing a trial court's duty to award costs under Rule 39 and few court of appeals cases. However, it is clear from a mere reading of Rule 39 that the court applying it, whether the trial court or the court of appeals, has a certain amount of discretion in determining whether to award costs to the appellee even in a fully reversed case. The applicable clause says that "costs will be taxed against the appellee unless *otherwise ordered*" (emphasis supplied). Thus, the rule seems to give this court, as well as the court of appeals, discretion to consider applications for costs on a case by case basis and to deny costs so long as it exercises sound judicial discretion in doing so.

16 Wright, Miller, Cooper & Gressman, *Federal Practice and Procedure: Jurisdiction* § 3985 says:

The general principal established by Rule 39(a) is that the prevailing party on the appeal is entitled to costs as a matter of course unless the court of appeals orders otherwise.... But Rule 39(a) repeatedly recognizes that the court of appeals has the power, exercisable in its discretion, to deny costs to the prevailing party, usually in the form of an order requiring each party to bear its own costs. A like discretion to deny the prevailing party recovery of his costs is vested in the district courts under Civil Rule 54(d).

*Id.* at 466.

While, as indicated, there is a dearth of opinions construing the court's discretion under Rule 39, that is not the case in relation to Rule 54(d) of the Federal Rules of Civil Procedure. That rule says, in words almost identical to those used in Rule 39, that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs."

The cases construing Rule 54(d) clearly support the author's statement in 10 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d,* § 2668 that:

The allowance of costs to the prevailing party is not obligatory. Other than when the matter is controlled by a federal statute or rule, the court is vested with sound discretion by Rule 54(d).... (citing cases). *Id.* at 197.

The authors of that article at p. 200 go on to say:

In keeping with the discretionary character of the rule, the federal courts are free to pursue a case-by-case approach to make their decisions on the basis of the circumstances and equities of each case, including such matters as the effort and expense of the parties. (citing cases).

In Bartel, *Taxation of Costs and Awards of Expenses (1984),* 101 F.R.D. 553, the author at p. 559, cites numerous cases from many jurisdictions for the conclusion that "an award of costs is within the 'sound discretion of the district court.'" The author of that article also sets forth, beginning at p. 561, a wide range of reasons that have been invoked by courts to justify withholding costs from the prevail-

ing party. Among those reasons are "absence of clear victory" and "indigency and good faith." For the reasons discussed above, the court is convinced that there is an "absence of clear victory" in this case. As already discussed, Wal–Mart gained a reversal of the substantial counterclaim judgment, but, because the parties were left where they were found, the other parties to the lawsuit also gained considerably. Under these circumstances, the court deems it appropriate not to award the costs sought by Wal–Mart in this case. *See* the cases cited in Bartel, *supra,* at p. 562.

In Bartel, *supra,* at p. 561, it is said that: "the most common bases for denying costs to prevailing defendants have been the indigency of the losing plaintiff...." (citing cases). In cases such as *Maldonado v. Parasole,* 66 F.R.D. 388, 390 (E.D.N.Y. 1975), courts have said that: "indigency is a proper ground for denying costs in cases where there is a wide disparity of economic resources between the parties." As discussed in the court's earlier opinion, this case was originally filed by Wal–Mart against Transit, and during the course of the proceedings, Transit was declared insolvent by authorities in the State of Missouri and the matter was then pursued against Crist, the receiver. That must mean that Transit is insolvent and, therefore, probably indigent. Any funds paid by the receiver to Wal–Mart would be unavailable to pay insurance claims of Transit and to pay other creditors. Thus, there is certainly a wide disparity between the resources of the insolvent insurance carrier and Wal–Mart, one of the top retailers in the country. Perhaps that, standing alone, would not be sufficient grounds for this court to deny costs, but, when that fact is coupled with the "absence of clear victory" already discussed, the court believes that it provides support for the court's conclusion in this case.

The Court of Appeals for the Eighth Circuit recognized the trial court's right and discretion to deny costs to a prevailing party in the case of *Boyd v. Ozark Airlines, Inc.,* 568 F.2d 50, 55 (8th Cir.1977). The Court said:

While costs are normally awarded to the prevailing party, such an award is within the sound discretion of the trial court. Fed.R.Civ.Proc. 54(d); 6 Moore's Federal Practice § 54.70[5] (2d ed. 1976). Since the trial court did award Boyd $2,500 in attorneys' fees, we cannot say that it abused its discretion in failing to award her costs as well.

■ In short, the court believes that the law clearly is that both a court of appeals and a trial court applying Rule 39 of the Federal Rules of Appellate Procedure have the right, in the exercise of sound judicial discretion, to deny costs to a prevailing party. That discretion must be exercised on a case by case basis, and, in doing that in this case, the court has determined that the denial of Wal–Mart's request that it be reimbursed in the amount of $30,139.00 for the premium for the supersedeas bond is the fair and equitable thing to do under the circumstances present here. The application for costs will be denied by separate order.