**Paul SPURLOCK, Plaintiff-Appellant,**

v.

**UNITED AIRLINES, INC., Defendant-Appellee.**

No. 71–1645.

United States Court of Appeals,
Tenth Circuit.

Oct. 10, 1972.

Rehearing Denied May 8, 1973.

 

Philip M. Jones, of Lewis & Jones, Denver, Colo., for appellant.

D. Monte Pascoe, of Ireland, Stapleton, Pryor & Holmes, Denver, Colo. (William G. Imig, Denver, Colo., with him on brief), for appellee.

John F. Goemaat, Washington, D. C. (John de J. Pemberton, Jr., Acting Gen. Counsel, and Julia P. Cooper, Chief, Appellate Section, E. E. O. C., Washington, D. C., were with him on brief), for E. E. O. C. as amicus curiae.

Before LEWIS, Chief Judge, DOYLE, Circuit Judge, and BRATTON, District Judge.

LEWIS, Chief Judge.

The appellant Spurlock, a black, brought this action alleging that United Airlines unlawfully discriminated against him because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. After a full trial, the trial court found that there was no proof of an intent on the part of United to discriminate in its employment of flight officers; that the job qualifications and testing procedures established by United are fair and reasonable; that they are uniformly applied without reference to race; that they do not accomplish discrimination in fact; and that they are job-related. Having made findings in United's favor, the trial court dismissed appellant's complaint. The trial court's opinion in this case is reported at D.C., 330 F.Supp. 228. We are in accord with the trial court's reasoning and result and summarize and extend it only because of the appellate posture and emphasis with which the case has been presented to us.

The evidence established that on May 19, 1969, the appellant applied for the position of flight officer. At that time, appellant did not meet United's qualifications to be considered for flight officer. He was 29 years of age, had two years of college, principally in music education, had logged 204 hours of flight time, and had obtained a commercial pi-

lot's license. United's minimum requirements for flight officer were 500 hours flight time, 21 to 29 years of age, a commercial pilot's license and instrument rating, and a college degree.

When appellant's application was received by mail in United's employment office, it was reviewed by a clerical employee. He circled in red the respects in which the appellant's qualifications were deficient. Appellant was then advised by letter that United had other applicants whose qualifications more nearly met United's requirements. No one at United saw or interviewed the appellant, and no one knew his race.

■ From the evidence, the trial court found an absence of an intent to discriminate on the part of United in hiring its flight officers. While it is important to examine the intent of a company charged with a Title VII violation, absence of discriminatory intent does not necessarily establish that the company's employment practices have no discriminatory *effect*. Title VII is aimed at the consequences of employment practices, not simply the motivation. Griggs v. Duke Power Co., 401 U. S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158. Thus, when a plaintiff is claiming that the criteria used by a company in screening job applicants discriminate against a minority group, he need only establish that the use of such criteria has a discriminatory *result*. Griggs v. Duke Power Co., *supra*. It is not necessary to prove a discriminatory intent but only that the discriminatory criteria were used deliberately, not accidentally. Jones v. Lee Way Motor Freight, Inc., 10 Cir., 431 F.2d 245, cert. denied, 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237.

■ In order to establish that United's flight officer qualifications resulted in discrimination against blacks, the appellant showed that out of the approximately 5900 flight officers in United's employ at the time of the trial only 9 were blacks. Appellant contends that these statistics establish a prima facie case of racial discrimination. United claims that these bare statistics establish nothing unless accompanied by similar information as to the number of *qualified* black applicants for the flight officer position. The circuitousness of this bootstrap argument becomes obvious when one recalls that it is United's *qualifications* for flight officer that appellant claims are discriminatory against blacks. We hold, therefore, that by showing the miniscule number of black flight officers in United's employ, the appellant established a prima facie case of racial discrimination in hiring practices. *See* Jones v. Lee Way Motor Freight, Inc., *supra*. This is true even though it is clear from the record that United applied its employment criteria without regard to race or color.

■ Employment practices which are inherently discriminatory may nevertheless be valid if a business necessity can be shown. And pre-employment qualifications which result in discrimination may be valid if they are shown to be job-related. Thus, once the appellant had established a prima facie case of racial discrimination, the burden fell upon United to show that its qualifications for flight officer were job-related. The trial court found that the burden had been met and that United's job qualifications were job-related. We agree.

■ The two job qualifications that appellant challenges are the requirements of a college degree and a minimum of 500 flight hours. The evidence at trial showed that United does not train applicants to be pilots but instead requires that their applicants be pilots at the time of their application. It cannot seriously be contended that such a requirement is not job-related. United also showed through the use of statistics that applicants who have higher flight hours are more likely to succeed in the rigorous training program which United flight officers go through after they are hired. The statistics clearly showed that 500 hours was a reasonable minimum to require of applicants to insure their ability to pass United's training

program.[1] The evidence also showed that because of the high cost of the training program, it is important to United that those who begin its training program eventually become flight officers. This is an example of business necessity. We conclude that the evidence amply supports a finding that the requirement of 500 hours flight time is job-related.

▮ With regard to the college degree requirement, United officials testified that it was a requirement which could be waived if the applicant's other qualifications were superior, especially if he had a lot of high quality flight time, that is, flight time in high speed jet aircraft. The evidence showed that United flight officers go through a rigorous training course upon being hired and then are required to attend intensive refresher courses at six-month intervals to insure that all flight officers remain at peak performance ability. United officials testified that the possession of a college degree indicated that the applicant had the ability to understand and retain concepts and information given in the atmosphere of a classroom or training program. Thus, a person with a college degree, particularly one in the "hard" sciences, is more able to cope with the initial training program and the unending series of refresher courses than a person without a college degree. We think United met the burden of showing that its requirement of a college degree was sufficiently job-related to make it a lawful pre-employment

standard. In reviewing the trial court's findings in this matter, we are limited to the clearly erroneous standard. Fed. R.Civ.P. 52(a). We conclude that the evidence supports the trial court's finding that United's requirements are job-related. The finding is thus not clearly erroneous.

▮ When a job requires a small amount of skill and training and the consequences of hiring an unqualified applicant are insignificant, the courts should examine closely any pre-employment standard or criteria which discriminate against minorities. In such a case, the employer should have a heavy burden to demonstrate to the court's satisfaction that his employment criteria are job-related. On the other hand, when the job clearly requires a high degree of skill and the economic and human risks involved in hiring an unqualified applicant are great, the employer bears a correspondingly lighter burden to show that his employment criteria are job-related. Cf. 29 C.F.R. § 1607.-5(c)(2)(iii). The job of airline flight officer is clearly such a job. United's flight officers pilot aircraft worth as much as $20 million and transport as many as 300 passengers per flight. The risks involved in hiring an unqualified applicant are staggering. The public interest clearly lies in having the most highly qualified persons available to pilot airliners. The courts, therefore, should proceed with great caution before requiring an employer to lower his pre-employment standards for such a job.

---

1. The statistics presented were for the period February 1965 through April 1967 and were based on United's experience with approximately 1300 trainees, 82 of whom did not complete the training program. The statistics produced the following results:

| No. of Hours | No. of Trainees | No. of Failures | Failure Rate |
|---|---|---|---|
| 200 or less | 352 | 32 | 9% |
| 201 to 500 | 128 | 19 | 14% |
| 501 to 1000 | 154 | 12 | 8% |
| 1001 to 1500 | 175 | 9 | 5% |
| 1501 to 2000 | 168 | 3 | 2% |
| 2001 to 2500 | 119 | 2 | 2% |
| 2501 to 3000 | 89 | 3 | 2% |
| 3001 to 5000 | 118 | 2 | 2% |

We conclude that United Airlines met its burden of proving that its employment requirements are job-related and the trial court's finding in that regard is not clearly erroneous.

Affirmed.