**Belinda H. LIGHTFOOT, Plaintiff,**

v.

**BOARD OF TRUSTEES OF PRINCE GEORGE'S COMMUNITY COLLEGE et al., Defendants.**

Civ. A. No. M–77–1348.

United States District Court,
D. of Maryland.

July 28, 1978.

Joseph A. Finlayson, Jr., Hillcrest Heights, Md., for plaintiff.

Daniel I. Sherry, Bowie, Md., for defendants.

## MEMORANDUM

JAMES R. MILLER, Jr., District Judge.

Plaintiff Lightfoot alleges that defendant Prince George's Community College (PGCC) violated the prohibition against racial discrimination in Title VII, 42 U.S.C. §§ 2000e *et seq.*, by not hiring her in January—February, 1976 as Program Director for the Largo, Maryland Campus Student Center. Pending before the court is PGCC's motion for summary judgment. No motion for class certification has been made.

Defendant PGCC moves for summary judgment (Paper 22) on the grounds, *inter alia*, that plaintiff lacked the work experience qualification required by the job description for the Program Director's position and that the defendant is therefore entitled to summary judgment as a matter of law. The facts are established in the answers of plaintiff to interrogatories, Papers 14, 19, 26 [hereinafter Pl. Answer]; plaintiff's exhibits attached to Paper 14 [PX]; the requests of defendant for admissions of fact and exhibits, Paper 17, which have been deemed admitted, Paper 25, 36 [hereinafter Adm. or DX]; and the Affidavit of Ernest R. Leach, Dean of Student Affairs, attachment to Paper 22 [hereinafter Leach Aff.].

## FACTS

On January 26, 1976, plaintiff submitted an application, DX 9, for a position as Program Director—Largo Student Center that was advertised in defendant's Position Available Bulletin (PAB) dated January 20, 1976, DX 7. Three applications for the position were received from two white males and one black female, the plaintiff. Leach Aff. 1. The Review/Screening Committee (Committee) concluded that all candidates met the minimum qualification of a

Master Degree,[1] but that no candidate had the required three years experience in administration and supervision in an area related to student activities or a student center. *Id.* 1–2. Initially the vote of the Committee on plaintiff's qualifications was 2 votes for qualified (1 black member, and 1 white member) and 3 votes not qualified (2 black members and 1 white member). Adm. 2(q). Mr. Leach, who is the Dean of Student Affairs and the administrative superior of the Program Director, Largo Student Center, concurred in these judgments. Leach Aff. 2. By letter dated February 3, 1978, plaintiff was notified of the rejection. *Id.*

By a letter dated February 4, 1978, DX 11, and a memorandum dated February 6, 1978, DX 12, the plaintiff submitted additional information and requested reconsideration of her application. DX 11–12; Leach Aff. 2. On February 10, 1978, the Committee considered the appeal and asked Mr. Leach the Dean of Student Affairs to investigate the supplemental credentials. *Id.* Consistent with procedures followed when checking references for candidates for other positions,[2] on February 12, 1976, Dean Leach visited Virginia Commonwealth University where Ms. Lightfoot had been employed previously, and he interviewed Mr. George Gardner, Assistant Director for Special Services, who had worked as immediate supervisor for Ms. Lightfoot; Ms. Beatrice Bush, Director of Student Activities; Ms. Phyllis Mabel, Associate Dean of Student Services, who had coordinated programming with Ms. Lightfoot for the Special

Services program, in which Ms. Lightfoot was employed as a counselor. On the following day, Dean Leach talked by telephone with Mr. Earl Wheatfall, Director of Special Services who had administrative responsibility for the total Special Services Program. *Id.*

On February 13, 1976, Dean Leach gave a detailed report to the Committee which he summarized:

"I had received very positive recommendations about Ms. Lightfoot as a bright and energetic person, but no substantiation that she had ever served as a line administrator during the course of her employment at that institution."

*Id.* 3. On reconsideration the Committee voted unanimously (3 black members and 2 white members) that plaintiff did not meet the requirement of a minimum of three years experience in administration and supervision in an area related to student activities, student center. Adm. 2(w), 2(x); Leach Aff. 4–5. The Dean of Student Affairs concurred then and concurs now in that conclusion. *Id.* 5.

At the Committee's request, on February 17, 1976, Dean Leach met Ms. Lightfoot and explained the Committee's decision. Memorandum of February 25, 1975, from Dean Leach to Personnel Officer Ms. Schoen, attached to Paper 6. And on February 26, 1976, Personnel Officer Ms. Schoen formally notified plaintiff of the Committee's decision. PX 11.

1. Since plaintiff met this educational qualification requirement and since this is not a class action, plaintiff has not been injured by the requirement. She does not have standing to challenge it here on its merits, and, even if the educational requirement were inconsistent with Title VII, plaintiff could not prevail and impose Title VII liability on defendant PGCC on account of such educational qualification requirement. *See, e. g., O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); 42 U.S.C. § 2000e–5(f)(1) (suit by person claiming to be aggrieved); *Causey v. Ford Motor Co.,* 516 F.2d 416 (5th Cir. 1975). Partial summary judgment will be entered for defendant accordingly.

Evidence that the educational qualification has a disparate impact generally on blacks will, therefore, not be relevant on the merits. F.R. Evid. 401. However, evidence, if any, that the defendant instituted this requirement in order to disadvantage blacks may be relevant on the issue of defendant's good faith or the pretextual nature of its qualification requirements. *Id.* No opinion is expressed now on the admissibility of such evidence as the court is unable without the specific evidence before it to weigh probative value against the confusion of the issues and undue delay possibly resulting from its admission. F.R.Evid. 403.

2. For a description of general hiring procedures, see PGCC, Affirmation Action Plan 13–15 (4th ed. 1977), Paper 24.

The position of Program Director—Largo Student Center was not filled from January 20 to June 7, 1976. Adm. 2(j), 2(k).

Effective March 5, 1976, plaintiff's employment with defendant PGCC ceased by reason of her resignation. Adm. 2(o), 2(p).

On May 7, 1976, plaintiff's formal grievance under defendant PGCC's affirmative action program was denied by Robert I. Bickford, President of PGCC. R. I. Bickford, Memorandum and Decision, *In re Formal Grievance of Lightfoot v. Leach, et al.* (PGCC President May 7, 1976), attachment to Paper 22 [hereinafter Bickford Mem.].

In a June 7, 1976, Position Available Bulletin, the position of Program Director—Largo Student Center was readvertised. DX 8; Adm. 2(k). Unlike the January PAB's offer of a "Full-time, permanent" personnel status, the June PAB offered only a "Full-time, terminal position" personnel status, a less favorable one year contract personnel status. DX 8; DX F; PX 16, at 3; Adm. 2(*l*), 2(m). The required qualifications and criteria for evaluation were the same. *Id.* Plaintiff did not apply for the position announced in the June 7, 1976 PAB. Adm. 2(n); PX 16, at 3. The position was subsequently filled by a white male with a masters degree and about thirteen years experience. Adm. 2(r); PX 16, at 3.

In addition to the January and June Position Available Bulletins which were prepared by the PGCC Personnel Office, DX 7, DX 8, there is a Position Description Form. DX 10. Although the copy of the Position Description in the court file is not dated, it apparently was considered and approved by the Board of Trustees of defendant PGCC at the Board's December 1975 meeting. Bickford Mem. at 2.

The Position Available Bulletins prepared by the Personnel Office described the job experience requirement:

"Minimum of three (3) years experience in administration and supervision in an area related to student activities, student center."

DX 7, 8. Consistent with the PAB's, the Position Description approved by the PGCC Board of Trustees described the job experience qualifications:

"A minimum of three years' experience in an administrative and supervisory capacity in a Student Activities office or a Student Union building."

DX 12. Plaintiff's contention that the Position Description was not a job description binding on her is incorrect since state law makes the Board of Trustees responsible for general control of personnel matters. *Md. Ann.Code* art. 77A, § 1 (1975 Repl.Vol.). In any event, there is no pertinent inconsistency between these two written documents; each requires a minimum of three years experience in a job (1) where the applicant acted as an administrator and supervisor of other employees and (2) where the subject matter of the program was student activities of the kind conducted in a student activities office or student center as distinct, for example, from student activities governed by a school's academic offices. *See* DX 7, 8, 12.

### DISCUSSION

Relying on the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), four element analysis of the individual Title VII plaintiff's prima facie case,[3] the defendant PGCC urges that summary judgment be granted on the

---

**3.** In pertinent part, *McDonnell Douglas* held: "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the em-

ployer continued to seek applicants from persons of complainant's qualifications." 411 U.S. at 802, 93 S.Ct. at 1824. In footnote 13, however, the Court cautioned: "The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from [a complainant] is not necessarily applicable in every respect to differing factual situations." *Id.*

grounds (1) that plaintiff is not qualified and (2) that after plaintiff's rejection the defendant did not continue to seek applicants from persons with complainant's qualifications.

I

## SUBSTANTIAL EVIDENCE REVIEW OF EDUCATIONAL INSTITUTION EMPLOYMENT DECISIONS

Defendant PGCC urges that the defendant's decision on plaintiff's lack of the job experience required was supported by substantial evidence before the Committee as disclosed by the defendant's exhibits, the admissions, and Dean Leach's affidavit and that the "findings and decision of academic administrative bodies are to be upheld by the courts when reached by correct procedures and supported by substantial evidence." *Green v. Board of Regents*, 474 F.2d 594, 595 (5th Cir. 1973) (§ 1983 sex discrimination case after trial) (citing other 5th Cir. cases). *See Faro v. New York University*, 502 F.2d 1229, 1231–1232 (2nd Cir. 1974) (Title VII sex discrimination case after preliminary injunction hearings on the merits); *Oliver v. Moberly Missouri School District*, 427 F.Supp. 82, 87 (E.D.Mo.1977) (Title VII race discrimination case after trial dictum). *See generally Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (§ 1983 due process po-

liceman termination case on summary judgment);[4] *Hortonville Joint School District No. 1 v. Hortonville Education Ass'n*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976) (due process teacher discharge case on summary judgment);[5] *Beauchamp v. Davis*, 550 F.2d 959 (4th Cir. 1977) (§ 1983 due process teacher discharge case).[6]

The defendant's argument attempts to import into this suit to enforce Title VII's prohibition against unlawful discrimination in employment a rule from suits to enforce the Due Process Clause's prohibition against a deprivation of life, liberty, or property without due process.

██ In a Title VII case, the question on the merits is whether, for example, an employer has refused to hire an individual because of the individual's race, 42 U.S.C. § 2000e–2(a)(1), or whether an employer's facially neutral, but not job related, employment practices result in not hiring an individual because of his race, *e. g., Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). In an individual case, one subsidiary question of fact comprising part of a plaintiff's prima facie case is whether the plaintiff is qualified for the job. *McDonnell Douglas Corp. v. Green, supra.* In a Title VII case, the district court must find as a fact whether the defendant engaged in an unlawful employ-

---

4. In *Bishop*, the Court wrote:

"The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of a employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions."

426 U.S. at 349–350, 96 S.Ct. at 2080.

5. In *Hortonville*, the Court held that, absent personal or financial conflict of interest or personal animosity as distinct from participation on an official capacity, the Due Process Clause of the Fourteenth Amendment did not guarantee that decision to discharge teachers would be made or reviewed by any body other than the school board. 426 U.S. at 491–494, 497, 96 S.Ct. 2308.

6. In *Beauchamp*, the Fourth Circuit wrote:

"[A]n evaluation of teacher competence is necessarily a highly subjective determination that does not easily lend itself to precise quantification, nor, we might add, to judicial review. It is an area in which school officials must remain free to exercise their judgment and discretion, and we decline the invitation to substitute our notions of how to do so for those of the school board. *See Bishop v. Wood* . . . ."

*Id.* at 961 (citation omitted).

ment practice. *See* 42 U.S.C. § 2000e–5(g) ("If the court finds. . . ."). Likewise in an Equal Protection case, the district court must find as a fact whether, for example, racially discriminatory purpose was a motivating factor in the decision. *E. g., Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Whether the defendant's decision on the merits was motivated by a racial purpose or resulted from the racially aligned disparate impact of a facially neutral practice are questions of fact in a Title VII case on which the plaintiff must produce evidence and on which the court must find a fact.

▮ In contrast, in a suit to enforce the Due Process Clause's prohibition against a deprivation of life, liberty, or property without due process of law, the questions on the merits are first whether the plaintiff has an interest protected by the constitutional due process requirement and second whether the procedures were adequate. *See, e. g., Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *North Georgia Finishing, Inc., v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). The risk of an erroneous decision on the merits because of inadequate factual development is an important factor in determining whether the process due to the plaintiff includes a hearing. *See, e. g., Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977) (automatic

license revocation or suspension for drivers accumulating certain point totals through conviction for various traffic violations); *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (no school suspension absent fundamentally fair procedure to determine whether student misconduct has occurred); *Wolff v. McDonnell*, 418 U.S. 539, 556–572, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (deprivation of good-time credits); *Morrissey v. Brewer*, 408 U.S. 471, 480–82, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole revocation); *Fuentes v. Shevin*, 407 U.S. 67, 81, 87, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (replevin); *Goldberg v. Kelly*, 397 U.S. 254, 264–66, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (AFDC benefits). But the Due Process Clause is not a guarantee against incorrect personnel decisions. *Bishop v. Wood*, 426 U.S. at 350, 96 S.Ct. 2074, quoted supra. Cf. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (opportunity to fully and fairly litigate Fourth and Fourteenth Amendment search and seizure claim in state court precludes federal habeas corpus); *Holloway v. Cox*, 437 F.2d 412 (4th Cir. 1971) (federal habeas corpus reviews sufficiency of evidence only for existence of "some evidence" not for probative value beyond a reasonable doubt). In a Due Process case, the plaintiff may well evidence the incorrectness of a personnel decision to show the high risk of error in the pertinent procedures; the court, however, must decide, not whether there was a mistaken decision in plaintiff's case, but whether the procedures used were adequate.

For these reasons, the defendant community college's argument that in Title VII cases the findings and decision of academic administrative bodies are to be upheld if supported by substantial evidence is rejected. This conclusion does not mean that the defendant community college is liable under Title VII if after trial the judge believes that he would have hired the plaintiff; that is not the question. The questions are whether the "employer simply treats some people less favorably than others because of

their race, color, religion, sex, or national origin," (disparate treatment) or whether the employer uses "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity," (disparate impact). *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335–336 n. 15, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396 (1977).

II

## TITLE VII AND SUMMARY JUDGMENT

[9, 10] Although the community college defendant in a Title VII case must address the questions of disparate treatment and impact without the advantages of an attenuated substantial evidence standard as argued for here, the defendant community college may be granted summary judgment if it shows in the manner required by Rule 56 that there is no genuine issue of fact and that it is entitled to summary judgment as a matter of law. F.R.Civ.P. 56, 81. *E. g., Logan v. General Fireproofing Co.,* 521 F.2d 881 (4th Cir. 1971); *Patmon v. Van Dorn Co.,* 498 F.2d 544 (6th Cir. 1974); *Lim v. Citizens Savings and Loan Ass'n.,* 430 F.Supp. 802 (N.D.Cal.1976); 6 Pt. 2 *Moore's Federal Practice* ¶ 56.17[20–1] (1976 ed.). In ruling on a motion for summary judgment, all reasonable inferences are drawn in favor of the party opposing summary judgment, *e. g., Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir. 1950), but neither a generalized affidavit of one's qualifications, *Patmon, supra,* nor ambiguous general population statistics, *Logan, supra,* are sufficient to raise a genuine issue of fact in the context of a strong showing by the movant.

### A. *Plaintiff's Qualifications*

The first issue on which the defendant may seek partial summary judgment is on plaintiff's failure to meet the three year job experience qualification established for the Program Director Position. It is undisputed that the defendant PGCC's President, Dean of Student Affairs, and the ultimately unanimous and racially mixed Review/Screening Committee have concluded that the plaintiff did not meet the three year job experience qualification set by defendant. Undaunted, the plaintiff contends (1) that she is qualified for the job of Program Director—Largo Student Center, and in her answers to interrogatories and her admissions on file (which are considered on a motion for summary judgment, F.R.Civ.P. 56(c), she urges that she did meet the defendant's three year job experience qualification; (2) that in evaluating prior job experience the defendant uses an interview technique conducive to discrimination and unjustified by business necessity; and (3) that as a pre-employment requirement the three year job experience qualification itself violates Title VII by requiring a kind of experience or a duration, length, and level of experience with a disparate impact on blacks and without job relatedness.

Dean Leach's affidavit unequivocally states that in her employment at Virginia Commonwealth University, (on which plaintiff largely relies), the plaintiff had not "served as a line administrator." Leach Aff. 3, *quoted supra.* This statement in the affidavit, however, was not made on personal knowledge, but on the Dean's conversations with plaintiff's former employers. The statement is hearsay, F.R.Evid. 801, and as no exception (*e. g.,* business records) appears in the affidavit, it would not be admissible, F.R.Evid. 802, and it may not be considered on this motion. F.R.Civ.P. 56(e); 6 Pt. 2 *Moore's Federal Practice* ¶ 56.22[1], at 56–1312 n. 24 (1976 ed.) (collecting cases). No opinion is expressed on the possible effect of affidavits by plaintiff's former employer for other purposes, *e. g.* to evidence good faith basis for decision by the defendant's Review/Screening Committee, for which Dean Leach's Statement may be admissible. Accordingly, on the issue of whether plaintiff actually met the defendant's three year job experience requirement, the defendant's motion will be denied.

## B. Disparate Impact

The second issue on which the defendant PGCC may seek partial summary judgment is the absence of disparate impact on blacks of the defendant's three year minimum job experience qualification. *Cf., e. g., Dothard v. Rawlinson*, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977).[7]

In the January-February, 1976, applicant pool consisting of two white males and one black female, all were found not qualified for the Program Director job because each failed to meet the three year experience qualification. Leach Aff. 2. This fact is undisputed. In this actual applicant pool— obviously a small one—the representation of blacks (1 of 3 or 33%) was greater than either the defendant (variously 3–10%, depending on year, on method, and on qualifications, Paper 24) or the EEOC in its administrative determination of plaintiff's charge (14.3%, "employed teachers," PX 16, at 4) consider to be available in the relevant work force for the Program Director position at issue here. Considering these circumstances, this court concludes that it would not be reasonable to infer that the experience requirements had a disparate impact on blacks from the experience of the January—February applicant pool in which the plaintiff was considered.

In addition to the experience of the actual applicant pool for the job at issue here, the general statistics on the employment of blacks in defendant's administrative and managerial positions is relevant. The following table summarizes by year the representation of blacks in defendant's executive, administrative, and managerial jobs and in the available work force.

7. The *Dothard* court wrote:

  "Those cases make clear that to establish a prima facie case of discrimination, a plaintiff need only show that the facially neutral standards in question select applicants for hire in a significantly discriminatory pattern. Once it is thus shown that the employment standards are discriminatory in effect, the employer must meet 'the burden of showing that any given requirement [has] . . . a manifest relationship to the employment in question.' *Griggs v. Duke Power Co.*, [*su-

### BLACK REPRESENTATION EXECUTIVE/ADMINISTRATIVE/MANAGERIAL POSITIONS

| Year | Employed by Defendant, % (number) | Available, % |
|---|---|---|
| 1976 | 10[1] (4/40) | 10[3] |
| 1975 | 19[1] (11/58) | 10[3] |
| 1974 | 16[1] (9/56) | 7[4] |
| 1973 | 10[2] (3/32) | 3[4] |

Sources: (1) EEO–6 Report Information reproduced in PGCC, Affirmative Action Plans for 1977, 1976, 1975 Tables I. (2) PGCC, Affirmative Action Plan, Table I "College Active Work Force" (1st ed. 1974) (internal job classification scheme denoted "Administrators"). (3) D. C. Manpower Administration, Manpower Information for Affirmative Action Programs: Fiscal 1976, cited in PGCC, Affirmative Action Plans for 1977, 1976, Tables II. (4) PGCC, Affirmative Action Plans for 1975, 1974; Tables II (internal estimates). The preceding Affirmative Action Plans were submitted as Paper 24.

These numbers are undisputed. Although there may be some doubt about the accuracy of the internal estimates of work force availability statistics for 1973–74, the crucial work force availability statistics for 1976, the year at issue here, and for 1975 were drawn by the defendant from a source whose accuracy cannot reasonably be, and in this case has not been, questioned, the D. C. Manpower Administration, *Manpower Information for Affirmative Action Programs: Fiscal 1976*. (Prince George's County, Maryland is a suburb of the District of Columbia). The defendant's counting and job categorization of blacks employed in the Executive/Administrative/Managerial positions for the crucial years 1975–1976 is drawn from EEO–6 reports made under oath and penalty for false declaration. 29 C.F.R. § 1602.51 (1977); 18 U.S.C. § 1001. The plaintiff has not submitted an affidavit or other material raising a genuine issue concerning these fig-

*pra*], 401 U.S. at 432, 91 S.Ct. 849. If the employer proves that the challenged requirements are job related, the plaintiff may then show that other selection devices without a similar discriminatory effect would also 'serve the employer's legitimate interest in "efficient and trustworthy workmanship." ' *Albemarle Paper Co. v. Moody, supra,* 422 U.S. 405 at 425, 95 S.Ct. 2362, 45 L.Ed.2d 280, quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801, 93 S.Ct. 1817." 433 U.S. at 329, 97 S.Ct. at 2726.

ures,[8] nor has she submitted an affidavit under Rule 56(f) justifying the lack of opposing materials by their unavailability.

Accordingly, it would be unreasonable to infer the existence of a disparate impact on black managerial job seekers generally from the general statistics on the employment of blacks in defendant's executive, administrative, and managerial jobs.

For these reasons, this court concludes that it would be unreasonable to infer from the experience of the specific applicant pool or from the general experience of defendant's administrative jobs that the defendant PGCC's facially neutral work experience requirement for the job of Position Director—Largo Student Center has a disparate impact on blacks. Partial summary judgment will be entered accordingly.

### C. Job Relatedness

The job relatedness of defendant PGCC's pre-employment requirement of three years experience in an area related to student activities, or student center is a question of fact. *See, e. g., Coopersmith v. Roudebush,* 170 U.S.App.D.C. 374, 379, 517 F.2d 818, 823 (1975) (recent legal experience for lawyer job related, dictum); *Spurlock v. United Airlines, Inc.,* 475 F.2d 216 (10th Cir. 1972) (minimum 500 flight hours experience pre-employment qualification sustained). *Cf. Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977) (height and weight standards). In *Spurlock* the court described the consideration in determining whether a pre-employment qualification is job related:

> "When a job requires a small amount of skill and training and the consequences of hiring an unqualified applicant are insignificant the courts should examine closely any pre-employment standard or criteria which discriminate against minor-

ities. In such a case, the employer should have a heavy burden to demonstrate to the court's satisfaction that his employment criteria are job-related. On the other hand, when the job clearly requires a high degree of skill and the economic and human risks involved in hiring an unqualified applicant are great, the employer bears a correspondingly lighter burden to show that his employment criteria are job-related."

475 F.2d at 219.

A pre-employment job experience requirement has two interdependent components: the *kind* of experience required and the *duration,* length, or amount of experience required. To an extent varying with the particular facts of a case, the more specialized and focused an applicant's kind of experience is, the shorter the duration of an applicant's experience need be to evidence the applicant's ability to do the job.

In this case, comparison of the responsibilities of the Program Director as described in the Board of Trustee's Position Description, (DX 10), and in Dean Leach's Affidavit at pages 4–5 with the evaluation criteria in the Position Available Bulletins (DX 7, 8), and with the required job experience discloses that the defendant PGCC requires past experience in the same *kinds* of responsibilities and tasks that are required to be performed by the person hired to be the Program Director. Actual performance in a former job or a practical test of the kinds of tasks and responsibilities encompassed by the job sought is perhaps the most accurate possible predictor of performance in the new job. *See, e. g., Coopersmith, supra; Spurlock, supra; Lewis v. Bethlehem Steel Corp.,* 440 F.Supp. 949, 968 (D.Md.1977). *Cf. Rodriguez v. East Texas Motor Freight,* 6 F.E.P. Cases 45, 49

---

**8.** As the statistics already support defendant, it is not necessary to decide defendant's contention that specific analysis of the available work force with the qualifications for this job as Program Director would establish only a 5% black availability rate. Nor, in the context of the specific statistical data supplied by defendant, is a genuine issue of fact created by the EEOC's inexplicable use of a 14.3% black availability statistic for "employed teachers" in

the Northeast and South, PX 16, at 4, since the geographic boundary of the EEOC's statistic is too distant from Largo, Maryland, and since the "employed teachers" occupation classification has no apparent connection to the administrative and supervisory job here. Indeed, the EEOC's own EEO–6 Reports require separate classification of administrators and instructional staff.

(W.D.Tex.1973), *rev'd*, 505 F.2d 40, 59 (5th Cir. 1974), *vac'd*, 431 U.S. 395, 403 n. 9, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), *aff'd on remand*, 560 F.2d 1286 (5th Cir. 1977) (per curiam).

There is no direct explanation by the defendant in this case for its decision to require a minimum of three years experience. But a comparison of the pre-employment job experience qualification required by defendant PGCC for its Program Director—Largo Student Center Position with the experience required by other colleges is instructive on the job relatedness of the requirement.

Defendant PGCC required a minimum three years in job with administrative and supervisory responsibilities in the student activities—student union area (DX 7, 8, 12). The defendant did not require that the applicant have held a job by title as a director, an assistant director, or a staff member in a student union. *Id.*; PX 12, at 2. Six professional opportunity announcements for positions as Director (PX 7B, 8A, 8B), as assistant director (PX 6, 7A), and as staff member (PX 6), of a student union were submitted by the plaintiff as illustrative. One director's position required five years professional experience in student union work and preferred two years experience as a director (PX 8B); the other two stated no duration requirement, and required no narrower kind of experience in administration, student personnel, and college student affairs work, than defendant PGCC did, but each preferred a masters degree in business administration, student personnel or a similarly pertinent field (PX 7B, 8A). One associate director position required 6–8 years full time paid experience with a preference for school executive, recreation director or student activities director (PX 6); the other position description listed no duration requirement but required a work experience in business, accounting, contracts finance, programming, labor, and technical support (PX 7A).

The preceding discussion discloses a strong factual base for a finding as a fact that the defendant's three year job experience qualification is job related; however, to make such a finding here would be to draw an inference favorable to the party moving for summary judgment when the same facts of record would support a reasonable—albeit marginal—inference favorable to the plaintiff. In this respect the defendant's failure to explain under oath the basis for its three year duration requirement has precluded summary judgment. In addition, at least in the circumstances of this individual non-class Title VII case, summary judgment on the job relatedness of the defendant's work experience qualification is inappropriate because of the close connection between the issue of plaintiff's qualification and the issue of the job relatedness of the work experience requirement. Accordingly, on this issue partial summary judgment is denied.

### D. Position Remained Open

The position of Program Director—Largo Student Center remained open after the January 1976 round of applications as none of those applicants were hired. In June 1976, the position was readvertised, and although the personnel status was reduced from permanent to terminal, the experience required and criteria for selection were the same (DX 7, 8). Nothing suggests that the Board of Trustee's Position Description was changed in any way. Since plaintiff did not reapply in June 1976 and since she was no longer employed by defendant and thereby no longer entitled under defendant's hiring procedures to notice of the application process prior to general advertisement in the professional media,[9] it is doubtful that she can complain about not being considered or hired in June, 1976. Nothing in the record suggests a general practice of notifying previously rejected and nonemployed jobseekers of the readvertisement of a position. Since the position remained

---

**9.** It is not established whether the applicant hired in the June 1976 process was a current employee benefiting from the advance notice procedure or an outside applicant. For an explanation of the preference by first consideration being granted to its current employees, see PGCC, Affirmative Action Plan 13–15 (2d ed. 1975).

open and additional applicants were solicited with the same qualifications, the defendant's motion for summary judgment on the ground that, as a result of the altered personnel status, the position did not remain open is denied.

An appropriate order will be entered.