**FIREFIGHTERS INCORPORATED FOR RACIAL EQUALITY, et al., Plaintiffs,**

v.

**Ted BACH, et al., Defendants,**

**Denver Fire Fighters Local 858, International Association of Firefighters, AFL–CIO, CLC, Robert Bendixon, Ron Green, Wayne Riegel, Thomas P. Montoya, and David L. Larson, Intervenors.**

Civ. A. No. 78–K–119.

United States District Court, D. Colorado.

Sept. 24, 1981.
As Amended Sept. 25, 1981.

Paul A. Baca, Denver, Colo., for plaintiffs.

Walter Brauer, III, Denver, Colo., for intervenors.

Stanley Ereckson, Jr., Asst. City Atty., Denver, Colo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

KANE, District Judge.

This case considers the racial balance in promotions at the Denver Fire Department.

The parties to a previous case, *DeBan v. Bach*, Civil Action No. C–4662 (D.Colo. 1974), entered into a consent decree governing the hiring of new firefighters.[1] This case concerns the racial balance in promotions from firefighter to higher positions in the department.[2] Plaintiffs brought this class action on behalf of all Mexican American and black firefighters in the Denver Fire Department.[3] They allege that defendants have discriminated against them in violation of the Civil Rights Act of 1870, 42 U.S.C. § 1981, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and in violation of Titles VI and VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d through 2000e–17.

In particular, plaintiffs challenge the requirement that a firefighter have four years experience before being eligible to apply for a lieutenant position and the practice of awarding credit for seniority in rating applicants. Plaintiffs also assert that the defendants' promotion practices have an impermissibly disparate impact on minorities, citing the low percentages of minorities in the higher grades. They seek a declaratory judgment that these practices are illegal and an injunction ordering various changes in defendants' hiring practices.

Plaintiff Quintana, now an assistant chief, alleges that defendant Wise, the Chief of the department, retaliated against him because of his efforts at minority recruitment by improperly suspending him and by delaying promotions. He seeks damages for lost wages. This court has jurisdiction to hear all of these claims under 28 U.S.C. § 1343.

## I. STIPULATIONS

The parties stipulated to the ethnicity of most of the named plaintiffs and to the capacities of the individual defendants. They also stipulated that, at the time of the pre-trial order, only one of the 28 assistant chiefs was Mexican American, and that there were no black assistant chiefs, captains or lieutenants, one black engineer, and no Mexican American captains. Additionally the parties agreed to the following stipulations:

1. That in addition to examination scores of the candidates, additional points are awarded to candidates on the basis of seniority.

2. That the Plaintiff, Frank E. Quintana, at times material to this action engaged in off-duty activities to assist minority applicants in their efforts to gain employment as firefighters on the Denver Fire Department.

3. That the Denver Fire Department receives Federal financial assistance.

## II. FINDINGS OF FACT

I make the following findings of fact:

The Denver Civil Service Commission is responsible for administering promotions in the Denver Fire Department. It may occasionally receive advice from the fire chief, but there was no evidence that the manager of safety played any role in the promotions process. I accordingly dismissed him as a defendant at the close of plaintiffs' case.

Plaintiffs did not attempt to demonstrate that the past hiring practices of the Denver Fire Department discriminated against minorities. They did argue, however, that the consent decree in *DeBan v. Bach* is strong evidence that there was discrimination in past hiring of firefighters. In December, 1973, 47 out of 479 firefighters were minorities. By January, 1978, 94 out of 492 firefighters were minorities. At that time, 4 of the 89 engineers and 3 out of the 148 lieutenants were minorities; the 51 captains were all whites.

When a firefighter seeks to be promoted to a higher position, he receives a rating

---

1. The decree states that the fire department will hire new firefighters alternately from two lists of qualified applicants, one list for minorities and one for whites.

2. These positions are engineer, lieutenant, captain, secretary, and assistant chief.

3. I certified this case as a class action on July 6, 1979. Several individuals excluded themselves from the class after receiving notice of this suit.

based on four factors. In October, 1977, the written test accounted for 45% of the score, the oral test for 48%, his seniority for 6%, and his efficiency rating for 1%. There was insufficient evidence to conclude that the oral or written tests were culturally biased or that they had a discriminatory impact. There was also insufficient evidence to form any conclusion on whether these tests were not job related.

A firefighter may not apply for promotion to a lieutenant position until he has served as a Firefighter First Grade for at least one year. Because of the seniority structure of the firefighter grades, this means that no one is eligible to apply for a lieutenant job until he has been a firefighter for at least four years. Because minorities have less seniority, this requirement has a discriminatory impact. Testimony conflicted on whether this four-year requirement was necessary. Some witnesses believed that three years was sufficient. I conclude that three years is sufficient. Acting lieutenants sometimes only have three years firefighting experience; four years is not essential. The oral and written examinations assure that no unqualified firefighters are promoted to lieutenant.

Testimony also conflicted on the amount of additional experience that is necessary before a lieutenant can be promoted to captain. One witness testified that no additional experience was necessary. Another thought that at least one year was essential. I conclude that one year additional experience is necessary. One year of experience is also necessary before a captain can be promoted to assistant chief.

An applicant may receive up to six points (out of 100) credit for seniority. After four years service as a firefighter, an applicant receives .1 point for each month of additional service, up to a maximum of 6 points for five years additional service. Plaintiffs' expert statistician testified that the seniority credit had a substantial, but not necessarily statistically significant, discriminatory impact. Testimony conflicted on whether this much seniority credit was job related. I conclude that it is excessive and that additional seniority credit is only job-related for firemen who have served up to seven years.

Although the official promotion procedures in the Denver Fire Department do not discriminate against minorities, there are countless practices in the day-to-day operation of the fire department that purposefully discriminate against minorities. There was considerable uncontroverted evidence that minority firefighters are discriminated against in the assignment of duties and in receiving on-the-job and other training opportunities. In particular, whites with less seniority received assignments and training opportunities that were more desirable than those that higher seniority minorities received. There was also evidence that minority firefighters were discriminated against in the assignment of "acting" lieutenant, engineer and driver positions. Minorities were also discriminated against in the assignment of "roving" positions and in position reassignments. Finally, some firefighters' "leagues" (cooperative company cooking groups) excluded minorities. These leagues are not officially sponsored by the department, but they do utilize department facilities and serve on-duty firefighters. Exclusion from a league constitutes a distinct disadvantage which can have an adverse effect of job performance and the development of job related skills.

Plaintiff Frank Quintana was improperly suspended for 95 days in 1973 by defendant Wise. There is strong evidence that this action was illicitly motivated. The Denver Civil Service Commission reversed this suspension and ordered that Quintana receive back pay. He was not reimbursed, however, for $2,500 attorneys fees. In 1974 defendant Wise delayed Quintana's promotion to secretary and to assistant chief. There is strong, unrebutted evidence that these delays were motivated if not because of Quintana's national origin then clearly as retaliation for his persistent efforts to protect and improve the lot of minorities in the department and those applying for entry to the department.

## III. CONCLUSIONS OF LAW

### A. Applicable Statutes

 Plaintiffs allege violations of four different statutes. 42 U.S.C. §§ 1981, 1983, 2000d—2000d–6 (Title VI), and 2000e—2000e–17 (Title VII). I find that plaintiffs have stated a cause of action under each of these statutes. Employment discrimination claims are cognizable under § 1981. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975). Because the defendants were acting under color of state law, and allegedly deprived plaintiffs of constitutional rights, plaintiffs have also stated a claim under § 1983. Because the Denver Fire Department receives federal funding, plaintiffs have also stated a cause of action under Title VI.[4] Plaintiffs clearly have a cause of action under Title VII. 42 U.S.C. § 2000e–2(a) provides:

It shall be an unlawful employment practice for an employer—

(1) ... to discriminate against any individual with respect to his ... terms, conditions, or privileges of employment, because of such individual's race, color, ... or national origin; or

(2) to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, ... or national origin.

The coverage of these statutes is not coextensive. See, e. g., *Johnson v. Railway Express Agency, Inc.*, 421 U.S. at 459–60, 95 S.Ct. at 1719–20. Plaintiffs have not, however, stated any causes that are actionable under one statute and not under the others. Further, plaintiffs have not asserted that any of the other statutes has a lower bur-

den of proof than Title VII. I therefore will not diminish any of plaintiffs' claims if I just consider them under Title VII. If any of defendants' actions violate Title VII, then remedies will be appropriate. Violations of additional statutes will not make any more remedies available.[5]

 Employment-discrimination claims under Title VII fall into two broad categories: disparate-impact claims and disparate-treatment claims. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S.Ct. 1843, 1854 n.15, 52 L.Ed.2d 396 (1977). Disparate treatment is where an employer

treats some people less favorably than others because of their race, color, ..., or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment.

*Id.* (citations omitted). Disparate impact, on the other hand, involves

employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Proof of discriminatory motive, ..., is not required under a disparate impact theory.

*Id.* (citations omitted). In the present case, the seniority credits and benefits must be analyzed under the disparate-impact theory while the employment practices must be analyzed under the disparate-treatment theory.

### B. Disparate Impact

 Plaintiffs urge that I compare the percentage of minorities in the population of the City and County of Denver[6] with the percentage of minorities in the higher ranks of the Denver Fire Department to deter-

---

4. Contrary to defendants' assertion, Title VI, § 604, 42 U.S.C. § 2000d–3 does not apply here. It only prohibits certain actions by "any department or agency," and therefore does not apply to actions by individuals.

5. At the close of plaintiffs' case, I dismissed the § 1981 and § 1983 claims against the city and the civil service commission members.

6. Plaintiffs alternately contend that I should use the minority percentage of the population of the Denver metropolitan area. That approach suffers from the same defect.

mine whether the promotion policies have a disparate impact. I decline to do this here because it is the promotion policies, rather than the hiring policies, that are being challenged. In determining if there is disparate impact, I must scrutinize the relevant labor market. *Hazelwood School District v. United States*, 433 U.S. 299, 308, 97 S.Ct. 2736, 2741–42, 53 L.Ed.2d 768 (1977). The relevant labor market here is those firefighters who are qualified to be promoted.

■ Comparing the relevant employment levels reveals substantial differences in the different employment levels. At the time of trial, 19% of the firefighters were minorities, while less than 5% of the engineers, and about 2% of the lieutenants, 0% of the captains, and 4% of the assistant chiefs were minorities. These figures are sufficient to establish a prima facie case that the department's promotion policies have a disparate impact. *Fisher v. Procter & Gamble Manufacturing Co.*, 613 F.2d 527, 543–44 (5th Cir. 1980); *cert. denied*, 449 U.S. 1115, 101 S.Ct. 929, 66 L.Ed.2d 845 (1981). *Spurlock v. United Airlines, Inc.*, 475 F.2d 216, 218 (10th Cir. 1972).

■ Defendants argue that the evidence that minorities pass the promotion tests at the same or better rate than whites demonstrates that the promotions policies are not discriminatory. This argument is overly simplistic. The four-year experience requirement challenged here bars some firefighters from even applying for promotion. It is therefore necessary to determine whether there is a disparate impact on those minority firefighters that would be eligible for promotion in the absence of the four-year requirement, not just the impact on those who actually apply for promotion.[7]

■ Of the various department policies affecting promotions, only those affecting seniority have been demonstrated to have any discriminatory impact. These policies

are permissible only if the defendants prove that they are job related. *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975); *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971); *Spurlock v. United Airlines, Inc.*, 475 F.2d at 218. Because I find that the department's seniority policies are too excessive to be job related, I hold that they are illegal under Title VII. *Afro American Patrolmen's League v. Duck*, 503 F.2d 294, 301–02 (6th Cir. 1974). See also *Bridgeport Guardians, Inc. v. Members of the Bridgeport Civil Service Commission*, 482 F.2d 1333, 1341 (2d Cir. 1973). Because I find that a three-year seniority requirement for eligibility for the lieutenants' exam is job related, that requirement is proper under Title VII. Likewise, because I find that giving seniority credit for up to the first seven years of firefighting experience is job related, seniority credit up to that limit is proper under Title VII. Additional seniority credits, however, are not legal under Title VII.[8] For promotion to captain, one year of experience as a lieutenant is a job-related requirement, and is therefore permissible. For promotion to assistant chief, one year experience as captain is job related, and therefore permissible. Greater experience requirements are not job related, are likely to have a disparate impact, and therefore are not permissible.

■ Contrary to intervenors' assertion, these results are not precluded by Title VII, § 703(h), 42 U.S.C. § 2000e–2(h). This section protects seniority systems that perpetuate the effects of discrimination that occurred before the effective date of Title VII, but not seniority systems that perpetuate the effects of post-Act discrimination. *International Brotherhood of Teamsters v. United States*, 431 U.S. at 343–56, 97 S.Ct. at 1858–65. Title VII became applicable to government agencies in 1972. Equal Em-

---

7. I therefore decline to follow the approach of *Friend v. Leidinger*, 588 F.2d 61, 66 (4th Cir. 1978).

8. This holding does not conflict with *Spurlock v. United Airlines, Inc.*, 475 F.2d 216, 218–19

(10th Cir. 1972). In that case, defendant demonstrated that its seniority policies were clearly job related, and therefore permissible under Title VII. Defendants in the present case have not made a similar showing.

ployment Opportunity Act of 1972, Pub. L.No. 92–261, § 2(1), 86 Stat. 103. The department's current seniority policies give credit for up to nine years seniority. These policies therefore do not give any extra seniority credit to those employed before 1972. To the extent that they discriminate against minorities, they therefore only have an effect back to 1972, i. e., for post-Act discrimination.

### C. Disparate Treatment

██ In addition to prohibiting racially discriminatory hiring and promotion policies, Title VII also prohibits terms and conditions of employment that discriminate against one racial group. *Garcia v. Gloor*, 618 F.2d 264, 270 (5th Cir. 1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981); *United Transportation Union Local No. 974, AFL–CIO v. Norfolk and Western Railway Co.*, 532 F.2d 336, 340 (4th Cir. 1974), *cert. denied*, 425 U.S. 934, 96 S.Ct. 1664, 48 L.Ed.2d 175 (1976). Prohibiting day-to-day discrimination is important not only because it directly violates Title VII but also because it may place minorities at a competitive disadvantage in receiving the on-the-job training that is necessary for promotions. See *Firefighters Institute for Racial Equality v. City of St. Louis*, 588 F.2d 235, 241–42 (8th Cir. 1978), *cert. denied*, 443 U.S. 904, 99 S.Ct. 3096, 61 L.Ed.2d 872 (1979). In this case there was considerable evidence that minorities were discriminated against in the day-to-day operation of the fire department. Faced with such extensive evidence, the difficult question is not whether there was a violation, but what remedy is appropriate.

Title VII has vested broad equitable powers in the federal courts in order 'to make possible the fashioning of the most complete relief possible.' The federal courts have 'not merely the power but also the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.' *Firefighters Institute for Racial Equality v. City of St. Louis*, 588 F.2d at 240 (quoting *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 418, 421, 95 S.Ct. 2362, 2372, 2373, 45 L.Ed.2d 280 (1975)).

██ In keeping with these broad equitable powers, plaintiffs request that I make several specific, detailed orders to remedy the day-to-day discrimination.[9] Defendants, on the other hand, correctly point out that the federal courts should only intervene in the day-to-day administration of public agencies under very exceptional circumstances. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 578, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978); *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). Although testimony reveals many examples of illicit discrimination in the day-to-day operation of the department, I will not dictate to the defendants how to run their department. Instead, my order gives them the opportunity to correct the discriminatory practices in the manner that they deem to be best, subject to the following requirements:

In the assignment of driver and company-officer training positions, and all "acting" positions, there shall be no racial or national origin discrimination. In order to assure

9. Plaintiffs request that I order:
 a. the establishment of a review committee, composed of one black, one Chicano, and one white, to hear complaints of discrimination;
 b. the department to institute sensitivity training;
 c. that the department establish three lists (one for whites, one for blacks, and one for Chicanos) for appointed ranks and for promoted ranks, and that hiring then be made alternately from these lists;
 d. an increase in the number of captains;
 e. a rotating assignment policy for "acting" positions;
 f. that "roving" assignments always be made to the most junior firefighter;
 g. that the Civil Service Commission adopt an unspecified, but more objective, rating system;
 h. a ban on retaliation against any of the plaintiffs;
 i. that the defendants submit a proposed table of organization; and
 j. that "leagues" be run in a non-discriminatory manner.

this result, defendants shall formulate an objective policy stating the minimum requirements for each of these positions. While the defendants may require a minimum amount of seniority as a requirement for each of these positions, the assignments shall not be made on the basis of seniority. Rather, all of those who meet the requirements to be eligible for a position shall be given equal time in that position. Defendants shall keep records of the amount of time each eligible employee spends in these positions to assure compliance with this order. If defendants believe that other factors are essential in determining qualifications for any of these positions, they may institute testing procedures. They may not, however, utilize subjective evaluation to determine who is qualified for these positions. Defendants are prohibited from exercising personal favoritism in such assignments.

Defendants shall also formulate an objective policy for the assignment of "roving" positions. For these positions it shall be permissible, but not mandatory, for defendants to make the assignments based on seniority. Defendants must, however, adopt one department-wide policy, and shall keep time records to assure that these assignments are not made in an illicitly discriminatory fashion. Again, assignments must be consistent with racially neutral policy and personal favoritism is prohibited.

Although there was testimony that some of the "leagues," the cooperative company cooking groups' discriminated against minorities, defendants assert that "[t]he leagues which presently exist are not discriminatory in operation." Defendants also agree that everyone should be allowed to participate in these leagues. I therefore order that defendants shall not allow any league to utilize any department facilities if it illicitly discriminates in its membership policies. See *Firefighters Institute for Racial Equality v. City of St. Louis*, 549 F.2d 506, 514–15 (8th Cir.), *cert. denied*, 434 U.S. 819, 98 S.Ct. 60, 54 L.Ed.2d 76 (1977).

In order to assure compliance with this order and to prevent retaliation and discrimination after the date of this order, a grievance committee shall convene within 30 days of the date of this order. The committee shall consist of three members, one selected by the plaintiffs, one by the defendants, and one by the intervenors. The committee shall have the power to subpoena witnesses and documents to further its investigations and shall meet at least monthly to hear any complaints of discrimination within the department. If any committee member believes that there are violations of this order that the committee cannot or will not resolve, he may petition this court for relief, or, if necessary, for the appointment of a special master.

Plaintiffs have also requested that I order sensitivity training, in order that all employees are trained in the problems of illicit discrimination. Defendants assert that such a training program is already in existence, but should not be mandatory. I order that the above-described grievance committee shall formulate plans for a sensitivity training course within three months, and that all department employees participate in such a course within 12 months of its formulation. If the committee is unable to formulate a course within three months, any committee member may petition this court for further relief.

■■■ It will not be immediately apparent whether this order eliminates illicit discrimination. I therefore find it necessary to retain jurisdiction over this case. The grievance committee should be able to handle most complaints of day-to-day discrimination. It may not, however, be able properly to dispose of any remaining long-term discrimination. I therefore will allow plaintiffs to re-open this case to present evidence that minorities are being systematically discriminated against. In particular, plaintiffs may present evidence that minorities are not being promoted in proportion to their numbers in the relevant pool of promotables to demonstrate systematic discrimination. To allow defendants time to formulate non-discriminatory policies and practices, I will not re-open this case until at least six months after the date of this order.

### D. Individual Claims of Frank Quintana

 The illicitly based discrimination of defendant Wise against plaintiff Quintana is illegal under Title VII, § 703(a)(2), 42 U.S.C. § 2000e–2(a)(2). Quintana is therefore entitled to damages for the difference in pay between the position to which he was entitled to be promoted and the position in which he was working for the time that his promotion was delayed. *Id.* § 706(g), 42 U.S.C. § 2000e–5(g). Plaintiff has not, however, offered any evidence whatsoever on the amount of these pay differentials. He has also not offered sufficiently definite evidence of the length of the delays. It is therefore impossible for me to award him any damages on these claims.[10]

### IV. ORDER

In accordance with the above findings of fact and conclusions of law, defendants are

ORDERED to comply with the following requirements:

1. *Seniority*: Any firefighter who has at least three years experience with the department shall be eligible to take the examinations for promotion to lieutenant. Any lieutenant with at least one year experience shall be eligible to take the examinations for promotion to captain. Any captain with at least one year experience shall be eligible to take the examinations for promotion to assistant chief. In all promotions seniority credit shall only be given for up to seven years service with the department.

2. *Day-to-Day Operations*: Defendants shall form a policy consistent with this opinion governing the assignment of driver and company-officer training positions, and "acting" and "roving" positions. Defendants shall keep time records of all assignments to these positions. Such records shall be available for inspection by plaintiffs and this court at any time during normal office hours.

Defendants shall not allow any "league" to use department facilities if the league discriminates on the basis of race, or national origin in its membership policies.

3. *Grievance Committee*: A grievance committee consisting of three members shall convene within 30 days of the date of this order. Plaintiffs, defendants and intervenors shall each appoint one member of this committee. It shall have the power to subpoena witnesses and documents to further its investigations. It shall meet at least once each month to hear any complaints of discrimination within the department. If any committee member believes that there are violations of this order or any other racially based discrimination within the department, he may petition this court for relief, or, if necessary, for the appointment of a special master.

4. *Sensitivity Training*: The above-described grievance committee shall formulate plans for a sensitivity training course within three months. All department employees shall participate in this course within 12 months after its formulation. If the committee is unable to formulate a course within three months of the date of this order, any committee member may petition this court for further relief.

IT IS FURTHER ORDERED that defendants are permanently enjoined from any actions that would violate the above-described order. It is further

ORDERED that this court shall retain jurisdiction to allow plaintiffs to present evidence that minorities are being systematically discriminated against at any time after six months from the date of this order. It is further

ORDERED on the individual claims of plaintiff Frank Quintana, judgment shall enter against the plaintiff and for all of the defendants. It is further

---

10. Although the complaint alleges that Quintana lost wages because of the delays in his promotion, it also does not specify what amount of damages would be appropriate.

Plaintiff Quintana also mentions that he expended $2,500 in attorneys fees in successfully challenging his 95-day suspension. Such fees are often reimbursible under Title VII, § 706(k), 42 U.S.C. § 2000e–5(k). The complaint here does not seek such fees, however.

ORDERED that plaintiffs shall recover from defendants their costs and attorney fees. If the parties cannot agree on the amount of plaintiffs' attorney fees, then on or before October 15, 1981 plaintiffs' counsel shall file an affidavit containing the amount claimed and whatever facts and figures support it. Upon receipt of the affidavit, the matter will be set for prompt disposition. Following the award of attorney fees and costs, the case will be deemed closed subject to reopening for the purposes set out above.