731 F.2d 664
 34 Fair Empl.Prac.Cas. 1005,
34 Empl. Prac. Dec. P 34,297
FIREFIGHTERS INCORPORATED FOR RACIAL EQUALITY, a Colorado
non-profit corporation, Frank E. Quintana, Fred H.
Fernandez, Andrew Archuleta, Richard Nuanes, Jose F.
Archuleta, Phil Apodaca, Ernest B. Arellano, Karl Cordova,
Leonard V. Cardenas, James Hicks, Michael Ramos, L.M. Cruz,
Raymond Gabaldon, Richard DeHerrera, Nick Nuanes, Richard L.
Roach, John P. Drogheo, Onesimo Cole and Margarito Franco,
Plaintiffs-Appellees/Cross-Appellants,
v.
Ted BACH, Oswald C. Abernethy, Jesse Manzanares,
individually and as Commissioners of the City and County of
Denver Civil Service Commission, Merle K. Wise, individually
and as Chief of the Fire Department for the City and County
of Denver, and The City and County of Denver,
Defendants-Appellants/Cross-Appellees,
Dan Cronin, individually and as Manager of Safety of the
City and County of Denver, Defendant,
Denver Firefighters Local 858, International Association of
Fire Fighters AFL-CIO, CLC, Robert Bendixon, Ron Green,
Wayne Riegel, Thomas P. Montoya and David L. Larson,
Intervenors-Appellants/Cross-Appellees.
 Nos. 82-1612, 82-1613 and 82-1687.
 United States Court of Appeals,
Tenth Circuit.
 April 3, 1984.
 
 Darlene M. Ebert, Asst. City Atty., Denver, Colo. (Max P. Zall, City Atty., and Geoffrey S. Wasson, Asst. City Atty., Denver, Colo., with her on the brief), for defendants-appellants/cross-appellees.
 Walter C. Brauer, III, of Brauer, Simons & Buescher, P.C., Denver, Colo., for intervenors-appellants/cross-appellees.
 Paul A. Baca, Denver, Colo., for plaintiffs-appellees/cross-appellants.
 Before SETH, Chief Judge, McKAY, Circuit Judge, and BOHANON, District Judge.*
 McKAY, Circuit Judge.
 
 
 1
 This is an employment discrimination action. Defendants[1] appeal the trial court's judgment, 522 F.Supp. 1120, that the promotion practices of the Denver City Fire Department have a discriminatory impact on minority firefighters. The trial court, without determining whether the complained practices were part of a bona fide seniority or merit system, found that the seniority and day-to-day employment practices of the Department violated Title VII of the Civil Rights Act of 1964. See 42 U.S.C. Secs. 2000e to 2000e-17 (1976). Because we find that the trial court applied an erroneous legal standard, we reverse its judgment and remand for further proceedings.
 
 I. Background
 
 2
 This case concerns allegations of racially motivated discriminatory practices by the Denver City and County Fire Department. Plaintiffs, Firefighters Incorporated for Racial Equality (F.I.R.E.), a not for profit organization, and several Denver firefighters of Mexican-American and Black descent brought this class action on behalf of all Mexican-American and Black firefighters in the Department. They alleged that defendants' maintained racially discriminatory promotion practices in the promotion of journeymen to higher positions such as engineer, lieutenant, captain, secretary, and assistant chief and that these practices have an impermissibly disparate impact on minorities. Hence, they alleged, the Department was in violation of Section 703(a) of Title VII.[2] Particularly, plaintiffs challenged the requirement that a firefighter have four years experience before becoming eligible to apply for a lieutenant position, and, also, the Department's practice of awarding credit for seniority in rating applicants for promotion. Plaintiffs sought a declaratory judgment that such practices were illegal and an injunction ordering various changes in defendants' promotion practices. The trial court granted plaintiffs' requested relief.
 
 II. Title VII Claim
 
 3
 Title VII was designed "to assure equality of employment opportunities." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973). Additionally, in enacting Title VII Congress sought to "remove barriers that have operated in the past to favor an identifiable group of white employees over other employees." Griggs v. Duke Power Co., 401 U.S. 424, 429-30, 91 S.Ct. 849, 852-53, 28 L.Ed.2d 158 (1971). To achieve these goals Congress "proscrib[ed] not only overt discrimination but also practices that are fair in form, but discriminatory in operation." Id. at 431, 91 S.Ct. at 853. In Griggs, the Court expanded the definition of discrimination in Title VII cases beyond the accepted notions of purposeful or intentional conduct. The Court held that "practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to 'freeze' the status quo of prior discriminatory practices." Id. at 430, 91 S.Ct. at 853. Thus, Griggs established a difference in judicial treatment between discriminatory "impact" and discriminatory "treatment" cases.[3]
 
 
 4
 The trial court sub judice recognized the distinction between disparate treatment and disparate impact claims. Record, vol. 1, at 34-35. However, it erroneously held that "the seniority credits and benefits must be analyzed under the disparate impact theory while the employment practices must be analyzed under the disparate treatment theory." Id. at 35. While the record is ambiguous[4] as to whether the trial court found any, all, or some of the alleged discriminatory acts before it to be part of a seniority system, it is clear that the court never determined whether the Department's alleged discriminatory promotion practices were part of a bona fide seniority or merit system which would require a different standard of proof under Title VII. See International Brotherhood of Teamsters v. United States, 431 U.S. 324, 355-56, 97 S.Ct. 1843, 1864-65, 52 L.Ed.2d 396 (1977). The trial court failed to apply the doctrine of Teamsters, as clarified by the Supreme Court in American Tobacco Co. v. Patterson, 456 U.S. 63, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982), and Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), discussed hereafter.
 
 III. Section 703(h)
 
 5
 A. A Defense to a Section 703(a) Action.
 
 
 6
 Title VII's treatment of seniority systems carves out an exception to the general principle that facially neutral employment practices require no proof of a discriminatory motive in order to fall as violative of the Act. Section 703(h) provides in pertinent part:
 
 
 7
 Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system, ... provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin, nor shall it be an unlawful employment practice for an employer to give and to act upon the results of any professionally developed ability test provided that such test, its administration or action upon the results is not designed, intended or used to discriminate because of race, color, religion, sex or national origin.
 
 
 8
 42 U.S.C. Sec. 2000e-2(h) (1976) (emphasis added). The Court in Teamsters recognized that "an otherwise neutral, legitimate seniority system does not become unlawful under Title VII simply because it may perpetuate pre-Act discrimination." Teamsters, 431 U.S. at 353-54, 97 S.Ct. at 1863-64. The legislative history of Title VII illustrates that Congress made it clear that a seniority system is not unlawful because it honors employees' existing rights, even where the employer has engaged in pre-Act discriminatory promotion practices. American Tobacco Co. v. Patterson, 456 U.S. 63, 72-75, 102 S.Ct. 1534, 1539-41, 71 L.Ed.2d 748 (1982). The Court in Teamsters held that the plaintiffs could only attack the seniority system upon proof that the system was adopted with the intent to discriminate. Teamsters, 431 U.S. at 354-56, 97 S.Ct. at 1864-65. Teamsters stands for the proposition that section 703(h) protects a seniority system which would have otherwise fallen under Griggs if that system is bona fide.
 
 
 9
 Initially, the trial court must make a determination as to whether the Department's seniority system is bona fide. Next, it must consider which of the alleged discriminatory practices are part of that bona fide system. Those practices deemed part of a bona fide system are to be evaluated under the disparate treatment theory, while all other employment practices receive evaluation under the disparate impact theory. In order for a seniority system to be bona fide there are four factors the court should consider. Pullman-Standard v. Swint, 456 U.S. 273, 279-81, 102 S.Ct. 1781, 1785-86, 72 L.Ed.2d 66 (1982) (citing with approval, James v. Stockham Values & Fittings Co., 559 F.2d 310, 352 (5th Cir.1977)); Sears v. Bennett, 645 F.2d 1365, 1372 n. 5 (10th Cir.1981).
 
 
 10
 First, a court must determine whether the system "operates to discourage all employees equally from transferring between seniority units." ... Second, a court must examine the rationality of the departmental structure, upon which the seniority system relies, in light of the general industry practice.... Third, a court had to consider "whether the seniority system had its genesis in racial discrimination," ... by which it meant the relationship between the system and other racially discriminatory practices.... Finally, a court must consider "whether the system was negotiated and has been maintained free from any illegal purpose."
 
 
 11
 Pullman, 456 U.S. at 279-81, 102 S.Ct. at 1785-86 (citations omitted).
 
 
 12
 In the case before us the trial court never determined whether the alleged discriminatory practices were pursuant to a bona fide seniority system. The record clearly illustrates that these seniority practices were pursuant to a collective bargaining agreement. Record, vol. 12, Exhibits C-1, D-1 and H. Whether the practices and collective bargaining agreement meet the four standards set out by the Court in Pullman is a factual determination to be made in the first instance by the trial court. We remand for such determination.
 
 
 13
 B. Applicability to Post-Title VII Seniority Systems.
 
 
 14
 The trial court, under the belief that section 703(h) applied only to seniority systems in place prior to the effective date of Title VII, failed to consider the bona fides of the Department's system. Subsequent to the trial court's decision, the Supreme Court in American Tobacco Co. v. Patterson, 456 U.S. 63, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982) (5-4), clarified the rule that section 703(h) is not limited to seniority systems adopted before the effective date of Title VII. In Patterson, the Court held that " '[s]ection 703(h) immunizes all bona fide seniority systems, and does not distinguish between the perpetuation of pre- and post-Act' discriminatory impact." Id. at 75-76, 102 S.Ct. at 1540-41.
 
 
 15
 In light of the fact that section 703(h) applies to all seniority systems regardless of when adopted, we remand for a determination of whether the practices alleged by the plaintiffs herein are part of the Department's seniority system and whether such system is bona fide under the test set out by the Supreme Court in Pullman. If such system is bona fide, then section "703(h) exempts from Title VII the disparate impact of ... [such] system even if the differential treatment is the result of pre-Act racially discriminatory employment practices." American Tobacco, 456 U.S. at 75, 102 S.Ct. at 1540. If the trial court finds these practices to be part of a bona fide system, plaintiffs will be required to establish discriminatory treatment, under which proof of a discriminatory motive is crucial.
 
 
 16
 The case is reversed and remanded for proceedings consistent with the principles stated herein.
 
 
 
 *
 Honorable Luther L. Bohanon, Senior District Judge, Western District of Oklahoma, sitting by designation
 
 
 [1]
 On appeal, the defendants in this employment discrimination action are the Commissioners of the Denver Civil Service Commission, the Chief of the Denver City and County Fire Department, and the Municipality and County of Denver. Additionally, Denver Fire Fighters Local 858 of the International Association of Fire Fighters, AFL-CIO, CLC, a labor organization representing the firefighters of the City and County of Denver in collective bargaining, along with certain individual firefighters occupying the ranks of captain, lieutenant and first grade firefighter, intervened on behalf of the defendants before the trial court; they have also participated in this appeal
 
 
 [2]
 Section 703(a) of Title VII provides:
 (a) It shall be an unlawful employment practice for an employer--
 (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
 (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
 42 U.S.C. Sec. 2000e-2(a) (1976) (emphasis supplied).
 Initially, plaintiffs based this action on four different federal statutes: 42 U.S.C. Sec. 1981; 42 U.S.C. Sec. 1983; Title VI, 42 U.S.C. Secs. 2000d to 2000d-6; and Title VII, 42 U.S.C. Secs. 2000e to 2000e-17. The trial court found that a cause of action was stated under each of these statutes. However, it considered plaintiffs' claim only under Title VII since none of the other statutes has a lower burden of proof than Title VII. Additionally, any of the remedies ensuing from a Title VII violation would adequately redress plaintiffs' grievances. None of the other statutes cited by plaintiffs authorize any remedies in excess of those available under Title VII. At the close of plaintiffs' case, the trial court dismissed the section 1981 and section 1983 claims against the City and Civil Service Commission members. Record, vol. 1, at 34.
 We believe that the trial court was correct in its assessment that plaintiffs' case could most appropriately be tried under Title VII. Thus, our review is limited to the district court's treatment of the Title VII claim.
 
 
 [3]
 In a discrimination case where the employee alleges disparate treatment, in essence, the complaint is that "[t]he employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical ...." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). The Court in Teamsters clarified the distinction between disparate treatment and disparate impact. Disparate impact
 involve[s] employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another .... [citation omitted] Proof of discriminatory motive ... is not required under a disparate impact theory. Compare, e.g., Griggs v. Duke Power Co., 401 U.S. 424, 430-32 [91 S.Ct. 849, 853-54, 28 L.Ed.2d 158], with McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-06 [93 S.Ct. 1817, 1824-26, 36 L.Ed.2d 668].
 Id. at 336 n. 15, 97 S.Ct. at 1855 n. 15.
 
 
 [4]
 A review of the trial court's findings of fact, conclusions of law, and order reveals apparently inconsistent findings and conclusions. While the trial court held, erroneously, that seniority credits and benefits were to be analyzed under disparate impact and employment practices under disparate treatment, it also found that "the official promotion procedures in the Denver Fire Department do not discriminate against minorities," and that "there are countless practices in the day-to-day operation of the fire department that purposefully discriminate against minorities." Record, vol. 1, at 32
 The trial court's failure to conduct an analysis of the alleged discriminatory practices under section 703(h), so infected its decision that we are unable to discern from the record which practices were consistently reviewed under which theories--disparate treatment or disparate impact.
 A proper analysis must first begin with whether the Department's seniority system is indeed bona fide. If such system is bona fide, the next issue is whether the alleged discriminatory practices are part of the Department's bona fide system. See Pullman-Standard v. Swint, 456 U.S. 273, 279-81, 102 S.Ct. 1781, 1785-86, 72 L.Ed.2d 66 (1982). Only those practices pursuant to a bona fide system need be analyzed under the disparate treatment theory. Those practices which fall outside the bona fide system need only be evaluated under the disparate impact theory.